WASHINGTON H. SECREST'S EXECUTORS v. WILLIAM J. JONES.

The court affirmed the principles formerly decided in this case, (21 Tex., 121,) that a covenant to sell land is not a sale unless the purchase money has been paid; but that, while if the vendee fail to pay, the vendor may elect to abandon the contract, yet if he should not so elect, and the payment of the purchase money has really been made, the title becomes absolute.

Where the issue of payment was submitted to the jury, and the evidence warranted the finding of payment, the court refused to disturb the verdict.

The record of a deed after the commencement of the suit may be sufficient.

Where a jury finds facts proved on which the amount of the judgment may be calculated, it is sufficient. (Paschal's Dig., Art. 1469, Note 565.)

APPEAL from Lavaca. The case was tried before Hon. FIELDING JONES, one of the district judges.

The written documents and much of the evidence will be found in the former report of this case. (21 Tex., 121.) The general facts are as follows:

The land in controversy is situated in Colorado county, on the west bank of Colorado river, above and adjoining the town of Columbia. On 16 August, 1824, the title to one league and labor (including the land in controversy) was completed to Elizabeth Tumlinson. The grantee died, leaving six heirs and their representatives. On 19 December, 1833, the league and labor aforesaid were divided into six lots—one for each heir; and lot No. 2 became the property of James Wright, as the representative or assignee of J. J. Tumlinson, and included the land in controversy. On 24 April, 1834, Wright sold a part of lot No. 2 to Daniel T. Fitchett. The " act of sale " recites, that Fitchett having executed to Wright his two promissory notes, to wit, one for $50, payable May 1, 1834, and the other for $150, payable January 1, 1835, he (Wright) has sold the land (by specific metes and bounds) to Fitchett, and, it being inconvenient to have the title made at this time, binds his person and property to make a full transfer deed within three months from the date of sale, and in the meantime invests Fitchett with possession and with power to build houses, cut timber, and open fields thereon, as if it were his own, acquired by a just and legitimate title, and submits to the competent judicial authority to compel him to make title, or to process for damages that may accrue to Fitchett on account of his failure to make title. This " act of sale " was executed before R. M. Williamson, only alcalde of the jurisdiction of Austin, in the form that made it an authentic and judicial act; the original paper being retained in the alcalde's office as an archive, to be thereafter evidence of the sale and notice to all persons thereof. This mode of sale, and its effect as notice, was the act of law, or in accordance with the law governing such transactions. Fitchett took possession imme-

diately, built a dwelling-house and store, and made it his homestead and place of business until the succeeding winter, (in December or January,) when he removed to Brazoria; afterwards, in 1841, to Fort Bend; and then to Houston, where he died in 1844. On 23 September, 1841, Fitchett sold the land to the appellee, (Jones.) This transfer was filed for record in the register's office in Colorado county, September 5, 1843, and was recorded next day. The "act of sale" from Wright to Fitchett was filed for record in the same county November 11, 1840, and was recorded September 14, 1841. It was again recorded in said county, on additional affidavits, April 10, 1855. There is proof of the payment of the purchase price, or nearly the entire amount of it, in 1834 and 1835, although the notes were not retired. Fitchett continued to claim the land until he sold to Jones, and his claim was known and recognized in the neighborhood as the only one existing. Jones, as the vendee of Fitchett, by his own acts and through his tenants and agents, entered into actual, peaceable, and adverse possession in 1843, and so continued without interruption until Secrest took possession in 1853.

From the date of his purchase in 1841 until he was ousted in 1853, Jones constantly claimed to own the land as Fitchett's vendee, asserted the claim in every mode posssible, and his possession and ownership were notorious, and universally recognized and admitted; and during all that time there was no adverse or opposing deed or claim on file or of record in Colorado county, and the witnesses who resided in the neighborhood never heard any such claim spoken of.

On 18 August, 1835, James Wright again sold the land in controversy, as evidenced by "act of sale," to Joseph Thompson, dated at San Felipe, the same place at which his sale to Fitchett was made. This act of sale has not been recorded under the registry laws of Texas. On 19 January, 1838, Thompson sold to Burton & Shep-

herd, by his deed of that date.  When this deed was recorded does not appear.  On 11 February, 1853, Shepherd conveyed his undivided half of the land to W. H. Secrest, appellant's intestate, and the deed was filed for record the same day.  Neither Thompson, Burton, nor Shepherd were known to possess, or attempt to possess, or in any manner to claim or assert ownership of the land, except so far as their deeds may be considered expressive thereof. From the time Fitchett left the land until Jones took possession of it, it was unoccupied, except in two instances.  A sojourner and a stranger by the name of McGuffin occupied "Fitchett's houses" for a very short time as a mere intruder, without pretense of claim, and said he wanted to buy of Fitchett.  In the fall of 1835, the premises being vacant, and Wright having sold his homestead, (the Hardy place,) went into possession and continued until the runaway scrape in March, 1836.

*Wm. G. Webb*, for appellant, gave a critical view of the facts.

I. The evidence of partition was wrongly admitted.

II. The evidence of the Wrights was wrongly excluded and was material.

III. There was no proof that Fitchett had paid for the land.

IV. This assignment is as to charges given and refused. The court charged, in effect, that if the notes given for the land were not paid, but in March, 1835, and previous to the sale to Thompson, the notes were sold at sheriff's sale as the property of Wright, to satisfy a judgment against him, and the proceeds of the sale applied to the payment of Wright's debt, then, so far as Wright and the defendants, who claim under him, are concerned, the sheriff's sale must be considered as payment of the purchase-money of the land by Fitchett, and the plaintiff would be entitled to recover the land, and the court refused to charge the

reverse of this for the defendants. The court also charged, and in effect confined, the abandonment of the contract by Fitchett and his refusal to pay to a period before the sheriff's sale of the notes, and also in effect that, in order that there should be an abandonment, it was necessary that Wright should have renounced the contract and given notice of it to Fitchett before the sheriff's sale; and in the eighth charge it is held, that if Wright did not do these things, then he could not renounce the contract.

The charges given by the court maintain, first, that the sale of the notes by the sheriff was a payment for the land by Fitchett; second, that Wright could not renounce the contract with Fitchett after the sheriff's sale; third, that even to have renounced the contract before the sale by the sheriff it was necessary that Wright should have given notice to Fitchett; fourth, that after the sheriff's sale of the notes, it was not necessary for Fitchett to pay them at all to secure his title; and, fifth, that a renunciation of the contract by Fitchett after the sheriff's sale could not defeat his title. This charge was not rebutted. (Daniel v. Hill, 23 Tex., 572.)

V. Hence we also say, that it was incumbent on Jones, the appellee in this case, to show himself entitled to recover as against the vendee of Wright, to whom he sold after the sale to Fitchett.

VI. The second, third, and fourth charges, asked by the defendants, as to the staleness of the plaintiff's demand and his laches in slumbering over his demand, are peculiarly applicable to the facts of this case. They are also almost in the language of decisions of this court, and should have been given. (Smith v. Hampton, 13 Tex., 463; De Cordova v. Smith, 9 Tex., 129; De Witt v. Miller, 9 Tex., 239; Whiteman v. Castlebury, 8 Tex., 441; 4 Pet., 311; 8 Cranch, 471; 3 Ves., 720; 14 Pet., 173; 2 St. Eq., arts. 750, 769, and 771.)

VII. The verdict is contrary to the evidence. [Upon this the facts were argued.]

He also declared to Gill that he never intended to pay for the land.

*W. P. Hill,* for appellees, insisted that the case was really determined by the decision in 21 Tex., 121.

I. "The evidence would have well warranted the jury in finding that the price had been paid, especially after so great a lapse of time, and that thereby the title vested absolutely in Fitchett." If the jury would have been warranted in so finding upon the proof as it then stood, surely they were warranted in so finding upon the fuller proof given at the last trial. "But (says the Supreme Court) that was a question for the jury," and they have settled it for appellee. If there was conflict of evidence, the court will not disturb the verdict; and even if they would look into it to be informed on this point, it will find that there is no evidence seriously to traverse or raise any doubt that the verdict was right. The case having been remanded for a verdict upon a single issue of fact, and that verdict having been returned for the appellee, the case stands precisely as if the present finding of the jury had been before this court at the former hearing, and upon such a record the Supreme Court says there is no ground to disturb the verdict. To affirm the judgment below is only to do what this court has already decided is right and just. At the former hearing it said to the appellee, "go back to the district court and inquire of the jury whether the purchase money was paid, and if the jury say it was, you have an indefeasible title, and must recover in this suit." Put the opinion of this court and the verdict together, and this case is settled. We do not sincerely perceive any escape from this conclusion, or the logic that supports it; and it stands upon grounds so peculiar and simple, that authorities would only cumber and darken the case. It is conceded that upon the

second trial new issues of law and fact may have been made, and new proof presented; and the effort to show that such were made and presented is laboriously argued in the voluminous briefs of appellants' counsel.

II. Ten years' continued, peaceable, and adverse possession by Jones, in good faith, is fully made out by the proof. His possession from in 1843 until in 1853 was unbroken, and attended with all the facts necessary to give him a good title by limitation. This point is established, whether Jones claims under the limitation of three or ten years. Such was evidently the opinion of this court, as it may be inferred from the closing paragraph thereof.

III. The "merits" of appellee's title, apart from the limitation, must be considered as adjudged by this court on the former hearing.

IV. Entertaining these views, we confess ourselves unable to appreciate the point or force or application of the questions made and argued as to the nature and effect of the acts of sale, the registration thereof, &c. The only use of them must be to mislead the court from the true points to be considered and decided. They lie behind the former opinion of this court, and are all embraced and decided by it, and cannot be opened again unless this present court shall reverse all the doctrines and rulings of that opinion. But we refer to such of the briefs for appellee as remain on file for the discussions of such questions.

HAMILTON, J.—This case is now here, for the second time, on appeal from a judgment rendered in the district court of Lavaca county. When it was here before it was brought by appeal from the county of Fayette by the present appellant, and was decided by Chief Justice WHEELER, at the Galveston term, 1858, and reported in 21 Texas, p. 121. The clear and comprehensive view of the questions involved in the case, presented in the opinion

then delivered, leaves this court in this hearing but little labor.

The only error which caused the former reversal by this court was, that in the former trial in the court below the presiding judge held that the conveyance of the 24th April, 1834, from Wright to Fitchett, was an absolute conveyance of title, and that the question of the payment of the purchase money was not a question for the jury; whereas the instrument was only evidence of a contract of sale, and bound the obligor to make a conveyance in case the obligee shall not make default in his part of the contract. The court in its opinion proceed to say: "In case of the default of the vendee, the vendor may elect to abandon the contract and recover back or alienate the land, upon giving notice to the vendee, and his refusal to perform his part of the contract, although by its terms the payment of the purchase money may not be dependent on covenants." (Browning v. Estis, 11 Tex., 237, and cases cited.) "The court, therefore, erred in the charge to the jury, that the effect of the instrument of the 24th April, 1824, was that of an absolute deed or conveyance." And the opinion of the learned chief justice says further: "The evidence would have well warranted the jury in finding that the price had been paid, especially after so great a lapse of time, and that thereby the title became vested absolutely in the vendee, Fitchett. But that was a question for the jury. If it had been left to them to decide, under instructions, to the effect that if the purchase money was paid the title became absolute in the vendee, and he had the power to sell and convey the title to the plaintiff, there would have been no ground to disturb the verdict."

In the trial and judgment from which this appeal was taken, this fact of payment of purchase money from Fitchett to Wright for the land in controversy was distinctly in issue, and was found in favor of the appellee, and, we think, upon testimony fully justifying such finding.

The objection made on the former trial to the deed of partition of the 19th December, 1833, because it was not of record in the proper office in the county of Colorado, has since then, and before the last trial, as was suggested in the former opinion of this court, been fully met. It appears from the transcript to have been recorded in the county clerk's office of Colorado county on the 1st day of April, 1858.

There is a remaining question, relating to finding of the jury for damages for use and occupation of the property in controversy for want of certainty. It is true that the verdict of the jury did not, in terms, specify the amount in dollars, but they did what is in law equivalent to specifying the amount, by saying that the appellee, who was the plaintiff below, shall have and recover of the appellant $8 per month, from the date of the commencement of the suit to the rendition of the verdict. In law, what can be made certain is not liable to the objection of uncertainty.

We can see no error in the rulings and judgment of the court below, and it is therefore

AFFIRMED.