R. M. RUSSELL ET AL. V. JOS. M. FARQUHAR ET AL.

(Case No. 2953.)

1. EVIDENCE RES JUDICATA — EVIDENCE.— The admission in evidence of the record of proceedings in a former suit, in support of a plea of res judicata, is not affected by the fact that there were additional parties plaintiff and defendant, and also other property involved in the former suit, provided the parties to the suit pending were parties to the former suit, and there contested their rights to the property.

2. STATUTES CONSTRUED — EVIDENCE.— Though by the strict literal meaning of the words of the act of February 5, 1840 (Pasch. Dig., arts. 4710, 5023; also R. S., art. 4339), no judgment or decree determining the right to land and partitioning the same could be offered in evidence until duly recorded in the clerk's office of the county court of the county in which such tract of land or part thereof may be, it was only intended for the protection of bona fide purchasers and creditors, being a regulation affecting conveyances, and has no application when such judgment is offered in evidence, without being recorded, in a second trial between parties to the former suit in which it was rendered.

3. CONSTRUCTION OF STATUTES.— It is the duty of courts in construing a statute "to try out the right intendment of the law," in doing which they will look to the old law, the mischief, and the remedy, and when the intent is thus ascertained, to observe and follow it, though it may conflict with the language used.

4. DISTINGUISHED.— This case distinguished from Secrest v. Jones, 21 Tex., 121, and 30 Tex., 596.

APPEAL from Bastrop. Tried below before the Hon. J. P. Richardson.

The case is sufficiently stated in the opinion.

*Chandler, Carleton* and *Robertson,* for appellants.

I. To show that the judgment and decree was not admissible before it *was recorded,* it is only necessary to read art. 4710, Paschal's Digest, p. 791, for it is the only evidence of title offered by defendant that can be found in the statement of facts. Art. 4710 has never before been entirely ignored by any court until this instance. In Secrest *v.* Jones, 21 Tex., 132, the validity of this article is recognized and declared to embrace in its provisions an act of partition made in December, 1833, and in the same case (30 Tex., p. 597) it is said that the record of said act since the case was formerly before the court rendered it admissible. That the decree allowed to go to the jury in this case comes clearly within the purview of said article 4710, is too clear for argument. Hence we think the first assigned error must reverse this case.

*Timmons & Brown,* for appellees.

MOORE, CHIEF JUSTICE.— This is an action of trespass to try title, for damages and for partition of two labors and ninety acres of land described in the petition. Appellee, the defendant in the court below, pleaded not guilty, *res adjudicata,* and the subsequent ratification of the judgment referred to in the previous plea. Or in other words, that plaintiffs were estopped from denying or controverting the validity and binding force and effect of said judgment.

On the trial of the cause appellees offered in evidence a certified copy of a judgment of the district court of Fayette county, rendered May 20, 1859, and a certified copy of the proceedings had therein, to which suit appellants, appellee and others were parties, and wherein

the right to the land which appellants now seek to recover and have again partitioned was determined and partitioned.

To the introduction of which the appellants made substantially the following objections:

1. Said purported copy of transcript is not verified by a certificate of the legal custodian of the original papers, of which it purports to be a copy.

2. Said judgment and transcript show upon their face that the suit in which said judgment was rendered, and of which said transcript purports to be a copy, was between different parties than those to this cause, and that other and different property than that involved in this suit was the subject of litigation in that case.

3. A copy of said judgment is not shown to have ever been recorded in the office of the clerk of the county court of Fayette county, where the land involved in this suit lies.

4. Said transcript contains an agreement concerning land which is not shown to have ever been recorded, and notice of it had not been filed among the papers in this case for three days before the commencement of the trial, nor any notice of such filing given appellants.

All which objections were overruled and said certified copy of judgment and transcript of proceedings were read in evidence by appellee, to which appellants took their bills of exception.

Though other errors are assigned for the reversal of the judgment, these bills present for our consideration all the questions upon which from their argument counsel seem to rely for the reversal of the judgment, or which seem to be necessary that we should consider for the correct determination of the case.

We confine ourselves, therefore, to the consideration of the objections made by appellants to the admissibility in evidence of the certified copy of the judgment and tran-

script of the proceedings in said former suit, in the order we have stated them above.

To the first of these objections it will suffice to say that it is not sustained by the record.  But on the contrary, the record shows that both the copy of the judgment and of the transcript were certified to by the proper officer and legal custodian of the papers and records, copies of which were offered in evidence.

To the second we reply, while it is true that it appears on the face of said transcript and judgment that there were other parties as well as other property involved in the former suit than in the present case, as appellants and appellee were parties to it, and as all the property involved in this suit and all the questions concerning it, which appellants now seek to have adjudicated and determined were then considered, we are unable to perceive that the mere fact that there were parties interested in that suit who are not in this, or because there was property involved in it which is not now in controversy, in any way detracts from the force and effect of that judgment as between these parties, or furnishes a reason, if not otherwise objectionable, why said certified copies were not admissible in evidence in this case.

It is next claimed for appellants that the court, in overruling their third ground of objection to the introduction of these copies, violated an absolute and imperative rule of evidence expressly prescribed by the legislature for its guidance, or that the construction of the statute insisted upon by them has always been heretofore recognized and observed by this court.  If these propositions can be maintained, it must be admitted that the ruling of the court below on this objection was erroneous.  For we concede as freely as any, that the enactment of laws pertains solely to the legislative department of the government, and that it is the duty of the courts to observe and follow them when enacted without reference to their policy or

propriety.   Nor do we think we are authorized to disre-
gard and set at naught (unless in exceptional cases of
plain and obvious misconception) a definite and settled
construction of a statute by our predecessors.   But are
these propositions of appellants maintainable?   In our
opinion they are not.

In support of the first, appellants cite us to section 8
of the "Act concerning conveyances," approved Feb-
ruary 5, 1840 (Laws of Republic of Texas, Fourth Con-
gress, p. 155; also art. 4710, Pasch. Dig.), which reads,
"That hereafter every partition of any tract of land or
lot, made under any order or decree of any court, and
every judgment or decree, by which the title to any tract
of land or lot shall be recovered, shall be duly recorded
in the clerk's office of the county court of the county in
which such tract of land or lot, or part thereof, shall be;
and until so recorded, such partition, judgment or decree
shall not be received in evidence in support of any right
claimed by virtue thereof." See also Pasch. Dig., art. 5023;
section 4 of an act supplementary to "An act to provide
for the registry of deeds and other instruments of writ-
ing," approved February 9, 1860; also R. S., art. 4339.

If courts were in all cases to be controlled in their con-
struction of statutes by the mere literal meaning of the
words in which they are couched, it might well be ad-
mitted that appellants' objection to the evidence was well
taken.   But such is not the case.   To be thus controlled,
as has often been held, would be for the courts in a blind
effort to refrain from an interference with legislative au-
thority by their failure to apply well-established rules of
construction to, in fact, abrogate their own power and
usurp that of the legislature, and cause the law to be
held directly the contrary of that which the legislature
had in fact intended to enact.   While it is for the legis-
lature to make the law, it is the duty of the courts to
"try out the right intendment" of statutes upon which

they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the legislature to express its intent, and to follow which would pervert that intent.

In seeking to ascertain the intent of a statute, the words in which it is expressed should and evidently must receive our first as well as chief consideration. If upon the perusal of a statute its intent and the means for carrying such intent into effect plainly appear, and there is no apparent conflict between it and other seemingly unrepealed laws, it should be construed and enforced by the courts in conformity with the ordinary signification of the words in which it is expressed, unless a necessity for otherwise construing it is made to appear. But if its mere perusal should not enable the court to satisfactorily interpret it, then it becomes the duty of the court to look diligently for the intention of the legislature, keeping in view at all times the old law, the evil and the remedy. R. S., art. 315, sec. 6.

Let us see, then, what was the existing or supposed existing evil which called for the enactment of this statute relied upon by appellants, the remedy which it furnished for the correction of this, and the effect of this remedy upon the former law.

The section in question forms a part of an act concerning conveyances. And when subsequently re-enacted, it is found in a law regulating and concerning registration. The evil in the legislative mind evidently was, that under existing laws frauds might be perpetrated upon *bona fide* purchasers and creditors by persons who had previously parted with or been divested of their title to land, upon subsequent purchasers and creditors having no adequate evidence or information of such previous divestiture of title. By the old law, the bringing of suit charged all

the world with notice *lis pendens* of the matters then
in litigation. But this notice ceased with the termi-
nation of the case; and therefore conveyances by judg-
ment or decree of court was within the same evil as
existed in regard to transfers between parties prior to
the registration laws. Hence it was essential that they
should be subjected to the same rule. Public conven-
ience also demanded that there should be one office
in each county where those desiring to do so could
inform themselves as to the transfers or incumbrances
affecting all the real estate in the county. But if any-
one failed to have his transfer registered, certainly
only those who were in some way injured thereby had a
right to complain, or to insist that another had lost some
valuable or vested right by his failure to comply with the
law.

It has been an axiomatic principle and rule of the com-
mon law from the time whereof the memory of man
runneth not to the contrary, that the judgment of a court
of record, in cases where it had jurisdiction of the parties
and subject matter, was a finality of the litigation be-
tween parties and their privies. That the plea of *res
adjudicata*, when sustained by the record, was conclusive
of the matter in issue, irrespective of the merits of the
titles upon which the court had passed, has never been
questioned. And that a duly certified copy of the judg-
ment and proceeding of the district courts of this state,
is, and has always been, admissible to prove the exist-
ence and contents of such judgment, unless otherwise
enacted by the law in question, will certainly be denied
by no one. Surely, it cannot be said that there was an
existing evil when this law was passed, in the rules of
evidence of the district courts, permitting the introduc-
tion of their own records, or copies of those of other
courts, to prove that the matters sought to be brought in
question had previously been fully heard, considered and

finally determined between the same parties, demanding correction. And if not, why should it be supposed that the legislature had any such intention as to forbid their still being received in evidence on a second trial between the parties to the former suit? These considerations, we think, warrant us in saying, that, looking merely to this law of February 5, 1840, and its subsequent re-enactment, to which we have referred, it is reasonably plain that the court below did not err in holding the copy of the former judgment admissible in evidence as against appellants, who were parties to it. But when other laws bearing upon the question (Pasch. Dig., art. 3715; R. S., 2252), in connection with the common law rules of evidence and the effect and binding force of judgments *inter partes*, are considered in connection therewith, the correctness of its ruling is certainly free from all doubt or question.

We deem it unnecessary to cite authorities to show that it is the duty of the court " to try out the right intendment " of the law, and, when found, to observe and follow it though there may be a conflict between its intent and words. The elementary works on statutes and statutory construction are full of such cases; in many of which the seeming conflict between the intent and words have been even more marked than here. It may not be out of place, however, to quote a paragraph from an opinion of the then chief justice, in a case which came before the court shortly after its organization, regarding the construction of a statute in spirit nearly identical with that before us. In disposing of an objection to the admissibility in evidence of an unrecorded deed, under section 4 of the act of December 20, 1836, Chief Justice Hemphill said: " Were this provision presented to a mind unbiased or unenlightened by the construction of judicial tribunals, on similar statutory regulations, the conclusion would most probably be, that a conveyance not duly proven and presented could no more affect the rights of third parties

than if it had never been executed.   That proof and pre-
sentment were as essential to its operation on these rights
as was the execution itself of the instrument.   But it has
been the settled doctrine in the courts of the United
States, and in the courts of equity in England, in the ex-
position of statutes requiring conveyances to be registered
in order to make them valid titles against subsequent
purchasers, that if the subsequent purchaser has notice,
at the time of his purchase, of any prior unregistered
conveyance, he shall not avail himself of his title against
that prior conveyance.   All such laws are regarded as de-
signed to protect creditors and purchasers against prior
secret conveyances and incumbrances; and that where
there was actual notice of such prior conveyance, the
purpose of this law was fully accomplished, and that the
reason of the law ceasing, the law itself became inopera-
tive and its sanctions could not attach." Crosby *v.* Hous-
ton, 1 Tex., 237–8.

To maintain the proposition that this statute has been
always heretofore construed by this court as contended
for by appellants, we are referred alone to the case of
Secrest *v.* Jones, 21 Tex., 121, and in 30 Tex., 596, on a
second appeal.   But an inspection of this case shows that
it has no application whatever to the question under dis-
cussion.   The instrument there in question was not a
certified copy of judgment such as was admitted in evi-
dence in this case, but a deed or authentic act between
parties, passed before an alcalde in 1833, to divide and
convey title to land.   Just as any other conveyance of
land executed before a similar officer at that day, it was
required to be recorded by our subsequent registration
laws.   Watson *v.* Chalk, 11 Tex., 89.   Nor was it offered
in evidence against a party to it, but against a long
subsequent purchaser.   Nor did the court consider or
pass upon this point, nor was it necessary for it to do so.
On the contrary, this court has held that a certified copy

of a former judgment might, under some circumstances, be admitted though not previously recorded. Thornton *v.* Murray, 50 Tex., 161. That case clearly shows that the copy offered was admissible in this case, if for no other purpose, as one of the links of appellee's evidence in support of his third plea; and if admissible for any purpose, the objection as made was properly overruled. We do not, however, place our decision on so narrow a ground, but hold that the statute properly construed did not require the registration of the former judgment to render it admissible in a subsequent suit for title and partition of the same land between the same parties.

It is more than forty-one years since the enactment of this statute, and though we imagine there is not a member of the bar of this court of five years' standing who cannot call to mind a dozen or more cases in which the construction insisted on by appellants might not have been of temporary or permanent advantage to one or the other of the parties, yet we find in our fifty odd volumes of reports nothing warranting the belief that the law has ever heretofore been so considered by the bar, or so held by the court. This of itself is strongly persuasive, if not quite sufficient to warrant a denial of its correctness.

Appellants' further objection was properly overruled. If there was other matter than properly belonged to the transcript incorporated in it, this was not a ground for excluding the judgment and entire transcript; but at most it would merely have justified the exclusion of the objectionable part of it, or the asking of a charge properly instructing the jury regarding it.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered June 27, 1881.]