## THE STATE OF TEXAS vs. R. WELLS, ET AL.

### IN THE SUPREME COURT OF TEXAS, AUSTIN TERM, 1884.

*Tenure of Office.*—It is a provision of the organic law of this State that all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified; which however is subject to proper qualification, such as resignation, removal by legal vocation of office.

*Same—Liability of Sureties.*—Until an officer's official existence is at an end, he may continue to discharge the duties of his office. The liability of his sureties for his official misconduct would attach even after his term of office had expired, provided his successor had not then qualified.

*Relief of Sureties of Official Bonds—Statutes Construed, etc.*—The Acts of August 12, 1876, and that of the same month of later date referring to tax collectors must be construed together under a proper construction of the same, the sureties on the official bond of a tax collector cannot be relieved from liability thereon until a new bond has been given and approved, not alone by the Commissioner's Court, but by the Comptroller of Public Accounts. See the opinion in extenso on the whole question.

Appeal from Travis county.

#### STATEMENT.

Having examined the statement contained in the printed briefs of appellant and found it correct, we hereby adopt the same as our statement.

This suit was instituted by the State of Texas, in the District Court of Travis county, on the fourteenth of December, 1881, against Richard Wells and his sureties, on the official bond executed by said Wells on the eighteenth of April, 1876, as tax collector of Van Zandt county, for the taxes due the State for the year 1878, amounting to $1850.08 besides interest thereon from September Ist, 1879, at the rate of eight per cent. per annum.

On the second of December, 1882, the surety defendants, who had been served, filed their answer admitting they had executed and delivered the bond sued on, and that Wells had commenced discharging his duties under said bond, but they claimed that, on the application of the sureties, made at the August term, 1877, of the Commissioners' Court of Van Zandt county, the sureties had been relieved from all liability on said bond from that date, by order of said court, and that Wells was required to give a new bond, and was ordered to cease acting as tax collector until he gave the new bond, but that the clerk, by some oversight had failed to record said order in the minutes of his court; that the *failure was not discovered* until after the institution of this suit; that said order was entered *nunc pro tunc* by order of said court, on January 4th, 1882, and that the same was now in full force. Said answer of defendants denied that Wells was in default at or before said August term, 1877; claimed that they were not liable for any default that may have occurred since then, and alleged that after said relieving order was made, in August, 1877, Wells had given a new bond, which was approved by the Commissioner's Court and forwarded to the Comptroller, but, for some informability, was returned by the Comptroller for correction, but that the same was never again returned to the Comptroller, and that defendant Wells proceeded to execute the duties of his office under said new bond, and not under the bond on which these defendants were sureties.

On the second of December, 1882, the case wrs tried before the court without a jury, and judgment in favor of the State of Texas against the principal, R. Wells, for $2361.13, but in favor of the surety defendants against the State for all costs of suit, and discharging them from all liability on said bond. To this judgment the State then and there excuted and gave notice of appeal.

### OPINION.

Previous to the passage of the act of August 12, 1876, providing a remedy whereby sureties on the bonds of county officers, might relieve themselves from liability for the future defaults and official misconduct of the officer, the obligation of the surety had been considered a continuing contract; a liability extending throughout the term of office; and from which the surety had no means of relieving himself.

By that act a privilege or favor was conferred upon such sureties, and by which, notwithstanding they, by signing the bond, qualified the officer to discharge the duties of the office, they could protect themselves from liability for and on account of any future official misconduct upon his part.  Hence it would seem to result, that the security to obtain the benefits of the act, would have to pursue the remedy as there given, until all the acts upon which his discharge is conditioned had been accomplished.

It is provided by the organic law that "all officers within this state shall continue to perform the duties of their office until their successors shall be duly qualified."  This of course is to be understood with its proper qualifications.  The officers may resign, or may be removed by competent authority, and the office declared vacant either of which would terminate his official existence and he would not thereafter be authorized to discharge the duties of the office.

But until his official existence is at an end he may continue to discharge the duties of the office.  And it seems that his sureties would be liable for his official misconduct, and that liability would continue even after the expiration of the term of office had expired, provided his successor had not then qualified.  (Thompson vs. State of Mississippi, 37th Miss. 518; Placer co. vs. Dickerson, 45 Cal., 12 ; Anderson vs. Langdon, 1 Wheat., 85.)

While it is provided by the first section of the act of August 12, 1876, that upon notice being served upon the officer of the surety application to be relieved from the bond he shall cease to exercise the function of his office except as therein provided, and if he fails to give a new bond within twenty days after such service then his office shall become vacant.

Still the second section provides that if the new bond is given and approved then the sureties on the former bond are discharged from liability for the future misconduct of the officer.

This act carries the evidence of hasty legislation and want of consideration upon its face.  The mode of procedure provided for is incomplete, and the terms of the act indefinite and uncertain.

For instance, the application of the surety is required to be made to the county commissioners' court but no action by the court upon it, is either authorized or required.  And again the language is that unless the bond is given within twenty days after the service of the notice, the office shall become vacant, yet no tribunal or other au-

thority is designated to ascertain the fact or declare the vacancy.

It but barely presents the outline of a remedy, nearly everything in reference to which is left to be supplied by judicial construction.

However, at the same session and but a few days after the passage of this act, the legislature passed another in reference to tax collectors, specifying the requisites and prescribing the conditions of their official bonds. It provides that these bonds shall be approved by the county commissioners' court and subject to the further approval of the comptroller. And also the commissioners' court or comptroller might either require a new bond or other surety, which if not given when required he shall be suspended and dismissed from office by the county commissioners' court.

As this latter act relates to the particular subject matter, the two should be considered as parts of the same statute and in arriving at the legislative intent should be construed together.

Statutes are to be enforced according to their true intent. For it is the intent which constitutes, and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the legislature to express its intent and to follow which, would pervert that intent. (Russell vs. Faquhar, 55th Tex. 360.)

As has been truly said "A thing within the intention is within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention."

In reference to a matter of such great importance as the collection and disbursement of the public revenue, the legislature could not have intended that sureties on official bonds should be discharged from further liability in such manner, or under such circumstances as would jeopardize the public interests. As has been seen without this legislation the surety would be liable not only for the full term of the office but also until his principal's successor had duly qualified.

Then in availing himself of the privilege or favor extended by the statute it would seem reasonable and just to require of him as a condition precedent to his discharge, to prosecute the remedy to that extent which would secure the public against loss for the misconduct of his principal, either by the substitution of a new bond satisfactory to and accepted by the proper authority, or else to see that he is dismissed from office.

The statute of Ohio after providing that justice of the peace might

be required to give other security, etc., contained the following: "And if such justice shall fail to give other security to the satisfaction of such trustees or city council within ten days after having received a written notice from the trustees to that effect such failure to give security shall be taken and deemed a resignation of his office and the trustees shall proceed to fill such vacancy as in other cases."

In a case that arose under that statute the court said: "Waiving all other questions which have been and might be made in the case, it is enough to say that the sureties on the official bond of all men at the beginning of his term of office voluntarily became responsible for the fidelity and integrity of his official conduct. That responsibility must continue during his term of office, unless they become released from it under some provision of law. The only condition provided by law on which they can be released from their responsibility is this, that he "shall give other security to the satisfaction of the trustees. No other security was given—none at all. The additional names subscribed to the official bond not appearing in the body of that instrument there are no words of obligation to bind them and they are of no significance whatever. The trustees did not declare the office vacant nor proceed to fill it as if it were vacant. The sureties ought to have seen to it that this was done or to have held the trustees responsible for the non-performance of their duty. The obligation of the sureties remained in full force." (Stevens vs. Allmen, 19th Ohio, St. 489.) Under our statute the only condition upon which the sureties discharged from further liability is thus expressed: "If a new bond be given and approved, the former surety or sureties shall be discharged from any liability for the misconduct of the principal, after the approval of such new bond.

True the approval of the commissioner's court was required by law, but it must be remembered thrt this was not final; the bond was still subject to the approval of the comptroller. And when rejected by that officer, the bond, notwithstanding the action of the commissioner's court, within the meaning of the statute has not been approved. In relying upon the execution and approval of the new bond as a discharge from further liability, the duty devolved upon the sureties to see that this was done, but having failed to do so and also having failed to procure the dismissal of the officer by

the commissioner's court, it would follow that their liability upon the bond continued in full force.

The purported order of the commissioner's court approving the new bond and discharging them from further liability, at most, would be conditional and dependent upon the action of the comp. troller in accepting or rejecting the bond. If the new bond had been given and approved as contemplated by the statute, the discharge would have followed as a matter of law, and the formal order of the commissioner's court could have added no efficacy to it.

But as the bond had not been approved as contemplated, the court had no authority to discharge the sureties from further liability, and therefore could not be made available by the sureties.

Our conclusion is that the court erred in not rendering judgment against the sureties as well as the the principal upon the bond, and therefore recommend that the judgment be reveased and that the Supreme Court now here render the judgment that ought to have been rendered by the court below, to-wit: That that the appellant, The State of Texas, have and recover of and from appellee R. Wells as principal and A. B. Graham, M. W. Ellis, G. W. Tull, D. Riley, Joshua Hallmore and E. J. Sides, the sureties on his official bond, the sum of two thousand three hundred and sixty-one and 13-100 dollars with interest thereon at the rate of eight per cent. per annum, from the 2nd day of December, 1882, together with all costs, etc.

Report of Commissioners of Appeals examined, their opinion adopted, and the judgment reversed in accordance with the recommendation oi the Commissioners.

Reversed and rendered on report of Watts, Commissioner.