JOHN P. KIRK, TAX COLLECTOR OF TRAVIS COUNTY v. MORLEY BROTHERS.

Decided March 23, 1910.

**1.—Statutory Construction.**

The principles of statutory construction, that the intent of the Legislature should prevail over the literal meaning of its language; that such intent is to be derived from the entire law; that the previous law and the construc-

tion given it should be considered; and that the literal construction of a special clause, if inconsistent with other provisions should not be allowed, etc., stated and illustrated.

**2.—Liquor License—Druggists.**

A druggist, under the Act of April 17, 1909, Laws First Called Session, Thirty-First Legislature, 293 (Robertson-Fitzhugh Bill) may obtain license to sell intoxicating liquors in quantities of one gallon or less, not to be drunk on the premises, upon prescription or otherwise, upon payment of the tax required of a liquor dealer, but without obtaining permit from the Comptroller or complying with the other requirements of the law governing the license of retail liquor dealers.

**3.—Same.**

The language of section 2 of the Act of April 17, 1909 (Robertson-Fitzhugh Liquor License Law), making "any person who sells intoxicating liquors in quantities of less than one gallon" subject to the provisions of that Act, does not apply such provisions to druggists selling liquor as an incident to their business. Its literal construction is incompatible with the general purpose of the law which manifests the intent to subject them to the payment of the tax required, but not 'to the other conditions imposed on retail liquor dealers, such as closing hours, permitting presence of minors, etc. ·

Appeal from the District Court of Travis County. Tried below before Hon. George Calhoun.

*Jewell P. Lightfoot,* Attorney-General, and *R. E. Crawford* and *Jno. W. Brady,* Assistants, for appellant, cited:—Chapter 17, General Laws of the Thirty-First Legislature of Texas, First Called Session, p. 293; Sturges v. Crowinshield, 4 Wheat., 202; Randall v. Richmond & Danville R. Co., 11 L. R. A., 460; Lewis' Sutherland on Statutory Construction (2d ed.), secs. 238, 351; Rev. Stats., arts. 5060c and 5060d; Rathburn v. State, 88 Texas, 281.

*J. L. Peeler,* for appellees.

RICE, ASSOCIATE JUSTICE.—Appellees, Stephen K. and Wm. J. Morley, constituting the partnership of Morley Bros., were on July 12, 1909, and had been for five years prior thereto, conducting a wholesale and retail drug business in the city of Austin, and, in connection with their said business, had been selling spirituous, vinous and malt liquors and medicated bitters capable of producing intoxication, in quantities of one gallon or less on prescription of physician ·or otherwise, not to be drunk on their premises, upon the payment of $562.50, to the collector of taxes of Travis County, which amount was the aggregate annual taxes ·due thereon to the county and State for such occupation. Desiring a renewal of their license to pursue such business for the ensuing year, they on said date applied to appellant, as tax collector of Travis County, for a license to conduct said business for said period, then and there tendering to him the sum of $375 for State tax and $187.50 for the tax due said county on said occupation, but said collector refused to receive said money and issue and deliver to plaintiffs such tax receipt or license, on the ground that they had not obtained a permit from the comptroller or filed a petition with the county judge, asking that a license be

granted them, nor had they filed a bond, conditioned as required by law, for the purpose of conducting such business.

Whereupon appellees brought this suit, praying for a peremptory writ of mandamus against appellant, as tax collector of said county, asking that he be required to accept said sum of money and to issue the occupation tax receipt or license to them for the pursuit of said occupation, in accordance with law.

Appellant replied by general demurrer and general denial. The case was tried by the court without the intervention of a jury, resulting in a judgment in favor of appellees, directing the issuance of said writ, from which judgment this appeal is prosecuted.

Before entering upon a discussion of the questions involved, it may be well to state that under the Act of the Thirtieth Legislature, passed April 18, 1907, commonly known as "the Baskin-McGregor Bill," the Attorney-General of the State had ruled that said Act did not apply to druggists, and that appellees, as such druggists, on the 12th of July, 1907, and also on the 12th of July, 1908, had, in pursuance of such ruling, by applying to the collector of taxes of Travis County, secured from him, without further formality than the payment of said tax, an annual occupation tax receipt or license, good for each of said years, authorizing them to pursue such occupation, and by virtue of which they had, during said years, conducted their said business, selling liquors in accordance with said license, and during which time they had, without giving any bond, kept their place of business open on Sundays and had allowed persons under the age of twenty-one years to enter and remain therein; but that after the passage of the Act known as the "Robertson-Fitzhugh Bill" on the 17th of April, 1909 (First Called Session of Thirty-First Leg., p. 293), the Attorney-General's Department, on July 7, 1909, held that said Act applied to druggists selling liquors on the prescription of a physician or otherwise, not to be drunk on their premises, the same as it did to regular saloon keepers, who sell liquors to be drunk on their premises, and that in pursuance of such ruling, the collector had based his refusal to issue the license applied for on July 12, 1909, by appellees.

Therefore, the only question presented by the record for our consideration is whether or not said last named Act is applicable to druggists who sell spirituous, vinous or malt liquors, or medicated bitters capable of producing intoxication, in quantities of one gallon or less, on the prescription of a physician or otherwise, not to be drunk on the premises, further than requiring of them the payment of the annual occupation tax imposed thereby.

It is insisted by counsel for the State that the last sentence in section 2 of said Act makes the entire law applicable to druggists, which is denied by appellees. Section 1 of said Act, so far as applicable to the question involved, reads as follows:

"Hereafter, there shall be collected from every person, firm or association of persons, selling spirituous, vinous or malt liquors, or medicated bitters capable of producing intoxication, in this State, not located in any county or subdivision of a county where local option is in force under the laws of Texas, an annual tax of $375 on each

separate establishment, as follows: For selling such liquors or medicated bitters in quantities of one gallon, or less than one gallon, $375; for selling such liquors or medicated bitters in quantities of one gallon or more than one gallon, $375; provided that in selling one gallon the same may be made up of different liquors in unbroken packages aggregating not less than one gallon; for selling malt liquors exclusively, $62.50; *provided further that nothing in this article shall be so construed as to exempt druggists who sell spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, on the prescription of a physician or otherwise, from the payment of the tax herein imposed;* provided further that this· article shall not apply to the sale by druggists of tinctures and drug compounds, in the preparation of which such liquors or medicated bitters are used and sold on the prescription of a physician or otherwise, and which tinctures and compounds are not intoxicating beverages prepared in the evasion of the provisions of this chapter, nor the local option law. . . ."

Section 2 reads: "A retail liquor dealer is a person or firm permitted by law, being licensed under the provisions of this Act, to sell spirituous, vinous and malt liquors and medicated bitters capable of producing intoxication, in quantities of one gallon or less, which may· be drunk on the premises. *Any person who sells intoxicating liquors in quantities of less than one gallon shall be governed by the provisions of this law, and be required to take out license hereunder.*"

Section 3 reads thus: "A retail malt dealer is a person or firm permitted by law, being licensed under the provisions of this Act, to sell malt liquors capable of producing intoxication exclusively in quantities of one gallon or less, which may be drunk on the premises."

Section 8 provides a penalty against any retail liquor dealer, or retail malt dealer, "who shall violate any of the provisions of this Act, or the provisions or conditions of the liquor dealer's bond, required by said Act."

Section 9 prescribes that any person of persons desiring to obtain *a retail liquor dealer's license* in this State, *or a retail malt dealer's license,* shall, before filing his or their petition for such license with the county judge, as provided by the Act, make application under oath to the comptroller of public accounts for a permit to apply for a license to engage in such business; and among other things required by· said Act the applicant must state that he has not, since the first day of May, 1909, either as owner or as representative, agent or employe of any other person, kept open his place of business, where spirituous, vinous or malt liquors. or medicated bitters capable of producing intoxication were sold, or aided or advised any other person in selling in or near any such house or place of business any such liquor after 12 o'clock midnight on Saturday, and between that hour and 5 o'clock a. m., of the following Monday of any week. Nor permitted minors to enter or remain in said house or place of business.

Section 10 of said Act requires any person or firm desiring a license as a *retail liquor dealer or as a retail malt dealer,* before engaging in said business, to file a petition with the judge of the County Court asking that said license shall be granted him, and among other require-

ments said petition shall have attached thereto, as exhibits, the permit and copy of the application to the comptroller, with other requirements as set forth in section 9; and section 15 provides that every person or firm desiring to engage in the sale of spirituous, vinous or malt liquors, or medicated bitters capable of producing intoxication, to be drunk on the premises, shall, before engaging in such sale, be required to enter into a bond in the sum of $5,000, conditioned among many other things, that said person shall not permit minors to enter or remain in or about his premises, nor shall he permit his said place of business to be kept open on Sunday.

So that it will be seen that the foregoing sections of said Act will not permit a retail liquor dealer, nor a retail malt dealer to engage in said business without first obtaining a permit from the comptroller, a license from the county judge and the execution of the bond, but druggists are not mentioned in nor embraced by these requirements; so evidently these sections are not applicable to them, unless they can be held to be included therein by implication.

Among the most important doctrines governing the interpretation of statutes is, first, the ascertainment of the legislative intent. (Mills County v. Lampasas County, 90 Texas, 606, 40 S. W., 403.) And that the courts must look to and be governed by the intent rather than by its literal meaning (Forshey v. Galveston, H. & H. R. Co., 16 Texas, 527; Cain v. State, 20 Texas, 362; Book 1, Texas Notes, 781; Runnels v. Belden, 51 Texas, 50; Poole v. Wedemeyer, 56 Texas, 296; McInery v. City of Galveston, 58 Texas, 340; State v. Wells, 61 Tex., 564). And that the intention of the Legislature in enacting a statute is the law itself, although inconsistent with the strict letter of the statute. (Edwards v. Morton, 92 Texas, 153.) In searching a statute for legislative intent in case of doubt, though such doubt attach only to a particular clause, the whole statute is to be construed together. (Graves v. the State, 6 Texas App., 235.)

In Russell v. Farquhar, 55 Texas, 359, Chief Justice Moore, in construing a single clause in a long Act, the purpose of which was to create and put into operation a city government for the city of Galveston, said: "While it is for the Legislature to make the law, 'it is the duty of the courts to try out the right intendment' of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used, by inadvertence or otherwise, by the Legislature to express its intent and to follow which would pervert that intent."

The main object being to arrive at the legislative intent, all irrational deductions or conclusions should be avoided. Book 4, Texas Notes, 1148. And, as said in section 260, Sutherland on Statutory Construction, p. 342: "Where the provisions of a law are inconsistent and contradictory to each other, or the literal construction of a single section would conflict with every other following or preceding it and with the entire scope and manifest intent of the Act, it is certainly the duty of the courts, if it be possible, to harmonize the various provisions with each other, and to effect this it may be necessary and

is admissible to depart from the literal construction of one or more sections."

"It is indispensable," says the same writer, sec. 218, "to a correct understanding of a statute to inquire, first, what is the subject of it, what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained and its general intent, a key is found to all its intricacies; general words may be restrained to it, and those of narrow import may be expanded to embrace it to effectuate that intent."

In section 234, he further says: "The intent is the vital part, the essence of the law. This is the intention embodied and expressed in the statute. A legislative intention to be efficient as law must be set forth in a statute."

It is further said by Chief Justice Willie, in Lufkin v. City of Galveston, 63 Texas, 439: "It is a cardinal rule in the construction of constitutions and statutes that the whole instrument must be taken together—the whole scheme had in view by the law-making power must be understood and carried out; and where there are apparent conflicts or inconsistencies between different parts of the instrument, that construction must be adopted which will give effect to every part, rather than that which will render any portion nugatory and of no avail. As a natural result of this principle, it follows that where, in one section, a general rule is prescribed, which without qualification would embrace an entire class of subjects, and in another section a different rule is prescribed for individual subjects of the same class, the latter must be construed as exceptions to the general rule, and be governed by the section which is applicable to them alone."

Viewing this Act as a whole, as we are justified in doing, in the light of our legislative history for the past thirty-five years in the enactment of laws dealing with this subject, and the interpretation given thereto by the courts, together with the untold evils flowing from an imperfect administration of the same, seems to demonstrate that, year by year, the Legislature has been endeavoring, by new and more rigorous enactments, to obtain a closer supervision and control of the sale of liquor in this State. Hence we must conclude therefrom that the main object and purpose of the present law was to more perfectly regulate and control the liquor traffic in this State, as conducted by the retail dealers in dispensing intoxicating liquors and other beverages, to be drunk upon the premises where sold, and that the numerous restrictions and limitations set forth in the Act were intended to apply to them as such. Druggists, prior to the passage of this Act, had always, without question, as we understand, upon the mere payment of the tax, been accorded the privilege of selling, in connection with their business, spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, in quantities of one gallon or less, on the prescription of a physician or otherwise, no to be drunk on the premises; and the present law seems to grant and continue in force the same right upon the same terms, as shown by the exemptions contained in the first section of the Act above quoted; and this exemption will, in our judgment, control, unless it should be held that the last sentence of the second section

should prevail over and negative the first. It is true that the second clause of section 2 does expressly provide that "any person who sells intoxicating liquors, in quantities of less than one gallon, shall be governed by the provisions of this law, and be required to take out license thereunder," but we have seen that, by the subsequent sections previously quoted, that this clause can not be held to apply to druggists for the reason that said sections directly and expressly refer to retail liquor dealers and retail malt dealers, subjecting them to their provisions, and embracing no other class of persons. In other words, to such persons as sell liquors *to be drunk on the premises where sold*. Druggists can only sell when the liquor *is not to be drunk on the premises*. This last clause or sentence of section 2 stands alone, and seemingly without any apparent connection with other parts of the Act. The question then recurs, can it, standing thus isolated and alone, control other parts of the law, such as the first section, exempting druggists from the provisions of the Act upon the payment by them of the tax, which seems clearly and expressly to confer a right or privilege, and which, from a careful reading of the entire law, seems to have been granted them, free from the restrictions and limitations imposed upon liquor dealers and malt dealers, by other sections thereof? We think not.

In construing an Act of the Legislature, it is said that a literal construction may be departed from to avoid uncertainty. (Secs. 323-4, Sutherland Stat. Const.) Again, in construing a statute, an isolated provision thereof should not be taken and without regard to the text or purpose thereof, given a literal construction. (McInery v. City of Galveston, supra; Storrie v. Houston City Street Ry., 92 Texas, 129; Book 3, Texas Notes, 217.) If from a view of the whole law an intent is deduced which is different from that of a particular part, that intent should prevail. (Board of Land Comrs. v. Weede, Dallam, 362; Cannon v. Vaughan, 12 Texas, 402.) It is also a rule of statutory construction that a thing within the intention is within the statute, though not within the letter; and a thing within the letter is not within the statute, unless within the intention (Walker v. State, 7 Texas Crim. App., 258, 32 Am. Reps., 596; Walstien v. State, 29 Texas Crim. App., 83.)

Besides this, it is suggested by appellees that, in construing an Act of the Legislature, it is well settled in this State that whenever it is found that the Act makes a general provision, like the last sentence in section 2, and at the same time the Act contains a special provision for a particular class, like sections 2, 3, 14, 15 and 18 of the present law, which only applies to those who sell liquor to be drunk on the premises, the special provision always governs. (Perez v. Perez, 59 Texas, 322; Lufkin v. City of Galveston, supra; Gulf, C. & S. F. Ry. Co. v. Rambolt, 67 Texas, 654; Howard Oil Co. v. Davis, 76 Texas, 630; McKenzie v. Baker, 88 Texas, 669; Stephens v. Campbell, 26 Texas Civ. App., 213, 63 S. W., 161; Shock v. Colorado County, 52 Texas Civ. App., 473, 115 S. W., 61; Smith v. Benefit Association, 16 Texas Civ. App., 593.

It will be seen that section 1 does not exempt any other class of merchants than druggists from the operation of the law. Why was

this exemption inserted. There must have been some definite purpose in so exempting them, and not others engaged in general business, from its operation. Druggists, it seems to us, were thus exempted for a very good reason. They, as such, sell medicines and drugs to alleviate the suffering of the sick; they are expected to keep open their places of business at night and on Sundays, thus permitting those in need of medicines to procure same at any time; and as liquor is regarded by many as having well-known medicinal properties, its sale, it seems to us, was thus given to druggists merely upon the payment of the tax, for the reason that the same might, upon necessity, be so obtained at any time; wherefore, they were relieved from the operation of those provisions of the law imposing the restrictions heretofore named upon liquor dealers, whose business it was the policy of the law to thus regulate and control.

As said by appellees in their brief, "Why were druggists mentioned at all in this section? Was not the first part of section 1 sufficiently broad to cover them? Are druggists not persons? If the entire law was intended to apply to them what was the purpose in saying that they could sell 'on the prescription of a physician or otherwise'? Why apply any limitation on them and on no one else? There must have been some reason why the Legislature added this particular proviso, and evidently the reason was that the entire law was made to apply to those engaged in the saloon business, the business that dispenses intoxicating liquors to be drunk on the premises where sold, and it was simply intended that nothing should be so construed as to exempt druggists from the payment of the tax, not requiring them to do anything else except pay the tax."

Again, as said by counsel for appellees: "If any of the sections following the first one were intended to apply to druggists, why were druggists not mentioned. There appears to have been no trouble for the Legislature to refer to druggists in the first section, and if that body had meant for the other sections to apply to them, it occurs to the writer that they would have been mentioned. The Thirty-First Legislature knew of the opinion of the Attorney-General's Department of 1907, wherein it was held that the liquor law of the Thirtieth Legislature did not apply to druggists. The Legislature also knew that druggists were simply paying a liquor tax, doing nothing further, and if the lawmakers had intended the various sections of the present law to apply to druggists, *they would have said so, not by some remote inference, but in unmistakable language.*"

And we also agree with counsel for appellees wherein they say: "To close druggists on Sunday would be contrary to a custom as old as the government itself, and would prevent the sick from obtaining medicine during the time closed; but as evidence of the fact that section 14 never intended for druggists to close, the section shows upon its face that it is applicable only to those who sell intoxicating liquors to be drunk on the premises. To sustain appellant's contention means that druggists who sell liquors on the prescription of a physician or otherwise, not to be drunk on the premises, can not procure a license at all, and the reference to them in section 1 is meaningless."

We think the Legislature intended by the provision in section 1,

exempting druggists from the operation of the Act upon the payment of the tax, to grant a substantial right, or privilege to them; and if we were to construe the Act in accordance with the contention of appellant, we would render nugatory this privilege by absolutely prohibiting all druggists from the sale of liquor at all, because in order to make sales thereof, they would be required to close their places of business after midnight during the week and all of each Sunday, and further, could not permit or allow minors to enter or remain in their place of business. The successful operation of a drug business makes it essential for the druggist to keep open at all times, for the purpose of meeting the demands of the public for medicines as they may need them; and it may often be convenient, as well as necessary, to send children to obtain such drugs; hence, to impose upon them the limitations and restrictions of the liquor law, would be to absolutely prohibit them from the sale of liquors at all, notwithstanding the fact that section 1 of the statute seems to clearly grant this right, upon the mere payment of the tax as named therein. Such a construction, even if it could be held to be within the letter, is certainly not within the spirit or intent of the law, and therefore should not be adopted. As said in Perez v. Perez, supra: "The general rule is that when the law makes a general provision, apparently for all cases, and a special provision for a particular class, the general must yield to the special clause, so far as the particular class is concerned."

Applying this rule to the present statute, we are inclined to believe that the special clause exempting druggists upon payment of the tax from the operation of the Act should control the general clause of the second section embracing all persons within the Act; and, so believing, we are constrained to hold that the Act in question was not intended to require druggists, before engaging in business, to comply with the various limitations and restrictions imposed on liquor dealers by the subsequent provisions of said Act; but hold that they, by the payment of the tax imposed, are entitled to pursue such occupation of selling spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, on the prescription of a physician or otherwise, as therein provided. And therefore sustain the action of the trial court in awarding the writ of mandamus requiring the collector to issue the license upon the payment of the tax. It follows, therefore, that, in our opinion, the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.