

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 6, 1958

Hon. Andrew P. Johnson
County Attorney
Dimmit County
Carrizo Springs, Texas

Opinion No. WW-387

Re: Authority of Commissioners' Court
to order or refuse to order a
local option election.

Dear Mr. Johnson:

Receipt is acknowledged of your request for our opinion upon the two matters hereinafter set out. Your opinion request has been supplemented with some additional facts which we thought it necessary for us to have in order to answer your questions.

We wish to thank you for your able brief which accompanied your opinion request.

You state that Dimmit County, by a local option election held in 1935, voted to prohibit the sale of all intoxicating alcoholic beverages in said county. You further inform us that no county-wide election has since been held which authorizes the sale of intoxicating alcoholic liquors in Dimmit County. You state that the City of Asherton is incorporated and lies wholly within the boundaries of Dimmit County; that the requisite number of qualified voters residing in said City of Asherton have presented to the Commissioners' Court of Dimmit County a petition asking that a local option election be held in said City of Asherton to determine whether the sale of alcoholic liquors will be authorized in the corporate limits of said city.

You desire the answer to two questions, and for the sake of brevity we shall condense each question, and transpose the order in which they are set out in your opinion request.

Question No. 2: In substance, your first inquiry is whether the election mentioned, if held, would be a legal election.

Our answer to the question is that such election would not be a legal election if held. Such election, if held, and if the majority of votes cast should be in favor of making Asherton "wet", would, in law, have no effect on the present "dry" status of the City of Asherton. In our opinion, Dimmit County, having become "dry" by reason of a county-wide local option election in 1935, Dimmit County and the whole of it will remain "dry" until it

1820

is otherwise determined by a county-wide election in which the majority of the votes cast and counted are for a change in the "dry" status of the county.

In the case of <u>Jackson v. State</u>, 118 S.W.2d 313, our Court of Criminal Appeals, speaking through Judge Graves, in part said:

> ". . . intoxicating liquors, once having been voted out, can only be voted back by a majority vote <u>of the identical territory</u> that had voted such liquors out. To this effect is our holding in Aaron v. State, 34 Tex.Cr. R. 103, 29 S.W. 267." (The added emphasis is ours.)

This decision was handed down in the year 1938 and has never been overruled.

The Dallas Court of Civil Appeals, in the case of <u>Goodie Goodie Sandwich, Inc., v. State</u>, 138 S.W.2d 906, speaking through Chief Justice Bond, in part said:

> "It has long been recognized by the courts of this State that, when the voters of a county, justice precinct, town or city have, by means of an election properly held, prohibited the sale of intoxicating liquors in such precinct or other political subdivision, it shall thus be unlawful, until the voters of such area shall determine otherwise by an election for that purpose. Intoxicating liquor, once voted out, can only be legalized by a majority vote of the territory that had voted it out. A change or abolition of the precinct or subdivision boundaries would not alter the status of the territory in relation to the sale of liquors. Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549; Hill v. Howth, 101 Tex. 620, 111 S.W. 649; Jackson v. State, 135 Tex.Cr. R. 140, 118 S.W.2d 313."

This decision was handed down in the year 1940. The writ of error tables show that error was dismissed by our Supreme Court with the notation that the decision was correct, and prior to the decision in the last mentioned case, the Supreme Court of Texas, in the case of <u>Houchins v. Plainos, et al.</u>, 110 S.W.2d 549, speaking through Mr. Justice Critz, said in part:

> "Of course, any such area has the right to become wet by so voting at an election legally

ordered and held for that purpose under present
local option statutes.  In this connection, how-
ever, we again note THAT SUCH ELECTION MUST BE
HELD IN THE SAME AREA THAT ORIGINALLY VOTED DRY."

It is therefore our opinion that insomuch as Dimmit
County became "dry" by reason of a county-wide local option
election, such county can only become "wet" by a county-wide
election.  No incorporated city of or in said Dimmit County can
become "wet" by virtue of any local option election in such in-
corporated city.

Subsequent to the first decision of the appellate
courts holding as above stated, the Legislature has on more than
one occasion amended the statute, using in the amendment sub-
stantially the same language as was in the statute when it was
so interpreted by the appellate court.  The Legislature is pre-
sumed to have known the construction placed upon this statute
by the appellate courts, and that the same language will be
given the same construction by the appellate courts as was given
the language previous to the amendments.  (Lewis v. State, 127
S.W. 808, 21 Ann.Cas. 656).  There exists also the presumption
that if the courts' holdings had been at variance from the in-
tent of the Legislature, a change would have been made in the
law by the Legislature.  (Republic Insurance Co. v. Poole, (Civ.
App.) 257 S.W. 624, error refused.)

The learned authors of the authoritative Texas Juris-
prudence view this question as we view it.  See Tex.Jur.Supp.,
Vol. 6, Sec. 42, on page 399, where it is said:

"Intoxicating liquor, once having been voted
out, can only be voted back by a majority vote of
the identical territory which voted liquor out . . . ."

So long as the County of Dimmit in which Asherton is
located is dry, no local option election in the City of Asherton
can change the "dry" status of Asherton.

Question No. 1:  The substance of the first ques-
tion you  propound is whether, under the factual
situation reflected in your opinion request, it is
now mandatory on the Commissioners' Court of Dimmit
County to order and have held a local option elec-
tion in the City of Asherton on the issue of whether
or not the sale of alcoholic liquors will be legal-
ized in said City of Asherton, a petition proper in
form having been presented to said Commissioners'
Court by the requisite number of qualified voters

residing in the City of Asherton asking that such
election be held.

Our answer to this Question No. 1 is that, under the
fact situation presented by you to us, it is neither mandatory
nor proper that the Commissioners' Court order such election
held. Asherton, being an incorporated city in the County of
Dimmit, which county became "dry" by virtue of a county-wide
election, it would be futile and illegal to hold such election
in the City of Asherton as the result of such election would
effect nothing whatever.

We are not unmindful of the language commanding the
holding of local option elections upon the presentation of a
proper petition, as set out in Article 666-32, Vernon's Anno-
tated Penal Code, but the "manifest reason and obvious purpose"
of the statute just mentioned was to enable the people residing
in a political subdivision to have the power to determine whether
intoxicating liquor could be legally sold within its limits by
holding a local option election so as to determine such question.
It was not the purpose of the above mentioned statute to demand
or require the holding of a useless election by a political sub-
division which had no power to determine any question by such
election. To so hold would be to sacrifice the manifest reason
and obvious purpose of the law to a literal interpretation of
the words used to express the purpose. This the law does not
demand nor countenance. (See Kirk v. Morley Bros., 127 S.W.
1109, error ref.). (And we have not exhausted the authorities.)

In all cases the legislative intention controls the
language used by the Legislature, and in the construction of a
statute confinement to the literal meaning of the words used is
not necessary where the strict literal meaning of the words
would be at variance with the intent expressed by the Legisla-
ture. Weber v. Rogan, 94 Tex. 62, 68, 54 S.W. 1016, 55 S.W.
559, 57 S.W. 940; Forshey v. Galveston, H. & H.R.Co., 16 Tex.
516; Harris County v. Smith, (Civ.App.)187 S.W. 701.

It has further been held that words should not be given
their literal meaning when such would thwart the main purpose of
the Legislature or would lead to absurdity. Gilmore v. Waples,
108 Tex. 167, 188 S.W. 1037; Edwards v. Morton, 92 Tex. 152, 46
S.W. 792; Winder v. King, (Com.App.) 1 S.W.2d 587, affirming 297
S.W. 689; Leslie v. Griffin, (Civ.App.) 23 S.W.2d 535, reversed
on other points (Com.App.) 25 S.W.2d 820.

We advise that the County Commissioners' Court of Dim-
mit County is certainly not required to expend public money for
the purpose of holding an illegal election the result of which
would effectuate nothing.

1823

## SUMMARY

The local option election inquired about would not be a legal election, if held, and would have no effect upon the present dry status of the City of Asherton.

It is not mandatory on the Commissioners' Court of Dimmit County to order and have held the local option election in the City of Asherton which has been petitioned for.

Very truly yours,

WILL WILSON
Attorney General of Texas

By _____
Geo. P. Blackburn
Assistant

GPB:wb

APPROVED:

OPINION COMMITTEE

J. C. Davis, Jr., Chairman
Cecil Rotsch
Gordon C. Cass

REVIEWED FOR THE ATTORNEY GENERAL

BY:   W. V. Geppert