### EX PARTE STEVE VACCAREZZA.

#### No. 3839.   October 10, 1907.

**1.—Habeas Corpus—Selling Intoxicating Liquor Without License—Repeal by Implication—Repealing Clause of Act—Refunding Clause Not Essential.**

Upon habeas corpus where relator was arrested under the Act of the Thirtieth Legislature, page 256 et seq., known as the Baskin-McGregor Law, a general repealing clause therein did not immediately repeal all pre-existing liquor licenses in this State under the old law, and persons having license under the old law had a reasonable time in which to comply with the provisions and conditions of said new law; during which time they had a right to continue in the sale of whisky according to the conditions of the old law, and were merely awarded a reasonable time in which to comply with the new law.   The want of a refunding clause for the unexpired license did not render the new law inoperative.

**2.—Same—Statutes Construed—Repeal of Law.**

Where relator was arrested on the 12th day of September, 1907, for selling liquor without license under the Act of Thirtieth Legislature, page 256 et seq., which law went into effect on the 12th day of July, 1907, and had more than a reasonable time within which he could have complied with the provisions and conditions of the new law, but relied upon the proposition that he had a right to continue selling whisky until his old license expired, he was guilty of a violation of the plain letter and spirit of the new law and subject to prosecution. Henderson, Judge, concurs in the result reached by Brooks, Judge, but dissents from the reasons given, and holds that the old law under the Act of 1893 was repealed by the Act of 1907, supra, both by implication and by its general repealing clause; and this although the new law did not provide for a refunding of the unexpired license.

From Bexar.

Original application for habeas corpus for release from arrest for selling liquor without license under the Act of April 18, 1907:

The opinion states the case.

*William Aubrey* and *Newton & Ward,* for relator.—The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States.  Constitution of the United States, art. 4, sec. 2, par. 1; Corfield v. Coryell, 4 Wash. C. C. Rep., 371; Lemmon v. People, 20 N. Y., 607; Paul v. Virginia, 8 Wall., 168; Slaughter House Cases, 16 Wall., 36; Blake v. McClung, 172 U. S., 239; Frasher v. State, 3 Texas Crim. App., 269; Ham v. State, 4 Texas Crim. App., 665; Vance v. Vandercook Co., 170 U. S., 445; Kohn v. Melcher, 29 Fed. Rep., 433; Crowley v. Christensen, 137 U. S., 86; Ward v. Maryland, 12 Wall., 418; Walling v. Michigan, 116 U. S., 446; Bill of Rights, Constitution of Texas, sec. 3; Pullman Palace Car Co. v. State, 64 Texas, 274; Ex parte Jones, 38 Texas Crim. Rep., 485; 43 S. W. Rep., 513; Bolen v. State, 48 S. W. Rep., 1118.

No citizen of the State can be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised except by the due course of the law of the land: Constitution of Texas, Bill of Rights, sec. 19; Constitution of the United States, 14th Amendment, sec. 1; Texas Rev. Civ. Stats., art. 5056; Nelson v. Cockrell, 3 Texas App., (Civil Cases), 448; Michelson v. White, 25 S. W. Rep., 801; Faulkner v. Cassidy, 87 S. W. Rep., 904, 17 Am. & Eng. Enc. of Law, 230. On question of repeal by implication: Hanrick v. Hanrick, 54 Texas, 109; Herndon v. Reed, 82 Texas, 651; Morales v. State, 36 Texas Crim. Rep., 245; Davis v. State, 2 Texas Crim. App., 431; State v. Drake, 86 Texas, 329; State v. Rosenberg, et al., 27 S. W. Rep., 293; State v. Williams et al., 30 S. W. Rep., 477.   On question of selling liquor under old license:  Hirn v. State, 1 Ohio St., 15; State v. Andrews, 28 Mo., 14.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of repeal of old law:  1 Sutherland Stat. Const., 246–252; Etter v. Mo. Pac. Ry., 2 Texas App. (Civ. Cases), 58; Dickinson v. State, 38 Texas Crim. Rep., 472; Harold v. State, 16 Texas Crim. App., 157; U. S. v. Tynen, 11 Wall., 88; Stebbins v. State, 22 Texas Crim. App., 32.   On question of police power:  Sprayberry v. Atlanta, 13 S. E. Rep., 199; LaCroix v. Commissioners, 49 Conn., 591; Brown v. Ga., 82 Ga., 224; Rowland v. State, 12 Texas Crim. App., 418; Ex parte Lynn, 19 Texas Crim. App., 293; Commonwealth v. Brennan, 103 Mass., 70; Western U. Tel. Co. v. Harris, 52 S. W. Rep., 748; Kresser v. Lyman, 74 Fed. Rep., 765; Plenler v. State, 11 Neb., 576.

BROOKS, Judge.—This is an original application for a habeas corpus granted by the presiding judge of this court.

The facts in the case show that relator was engaged in the sale of spirituous, vinous and malt liquors by retail, in all things having complied with the law as it existed prior to the passage of what is known as the Baskin-McGregor law passed by an Act of the Thirtieth Legislature, approved April 18, 1907, to be found in said acts on page 258, et seq. of said laws.  A prosecution was instituted against relator on

the 12th day of September by proper complaint and information being filed in the county court of Bexar County, charging him with selling said intoxicants without a license. Upon said complaint and information being filed, and relator being arrested, by virtue of a warrant issued thereon, relator applied for a writ of habeas corpus to the county judge of Bexar County, which being refused, he applied, as stated, to the presiding judge of this court.

By an agreed statement of facts accompanying the application, it appears that relator, as stated, had complied with all the laws regulating the retail sale of whisky prior to the act of the last Legislature. The State insists that said last act repealed the previous law. This relator denies, but both concede that if it does, then relator is guilty and ought to be remanded, but if it does not repeal said old law, then relator should be discharged. It is a well-known rule of statutory construction that repeals by implication of pre-existing law by a subsequent law are not favored by the courts. This tenet of construction of statutes is but another way of saying that the courts will not infer that a pre-existing law was repealed in the absence of some expressed declaration in the latter law repealing the previous law, or unless the clear legislative intent expressed in the latter law forces said repeal by implication. The State, however, insists that the Baskin-McGregor law not only repeals by implication, but by express terms the pre-existing law, and cites us to section 35 of the Baskin-McGregor law to support this insistence. Said section reads as follows: "All laws and parts of laws in conflict with this act are hereby expressly repealed." In passing upon a repealing clause in a subsequent statute however, same should not be given a literal construction and thereby operate a repeal of a former statute unless the clear import of the language of the Legislature in the latter act shows that it intended to repeal the former law. In passing upon this question, the Court of Appeals of the State of New York, in the case of Smith v. People, 47 N. Y., page 330, uses the following language: "A statute should not be so construed as to work a public mischief, unless required by words in the most explicit and unequivocal import. In the construction of statutes effect must be given to the intent of the Legislature whenever it can be discerned, though such construction seem contrary to the letter of the statute. Words absolute in themselves, and language the most broad and comprehensive may be qualified and restricted by reference to other parts of the statute, to other acts in pari materia, passed before or after, or to the existing circumstances and facts to which they relate. So also, contemporaneous legislation, although not precisely in pari materia, may be referred to for the same purpose. A clause in a statute purporting to repeal prior statutes is subject to the same rules of construction, and although general and unqualified, if the intent appear to give the language a qualified or limited sense, the intention must prevail over the literal interpretation."

Mr. Sutherland in his work on Statutory Construction, section 28,

in speaking of the method of interpreting a statute, lays down this natural, reasonable and salutary rule: "It is indespensable to a correct understanding of the law to inquire first what is the subject of it—what object is intended to be accomplished by it. When the subject matter is once clearly ascertained and its general intent, a key is found to all of its intricacies, general words may be restrained to it, and those of narrow import may be expanded to embrace it to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnance or inconsistencies with such intention. The intention of the Legislature is the aim of statutory construction, and where, though not expressed, it is clearly manifested by implication from the language used, we cannot say that it should not have effect. That which is not expressed in words may be plainly imported by implication."

And again, Chief-Justice Moore, in the case of Russell v. Faguhar, 55 Texas, page 359, lays down the rule for the construction of statutes very clearly, as follows: "If courts were in all cases to be controlled in their construction of statutes by the more literal meaning of the words in which they are couched, it might well be admitted that appellants' objection to the evidence was well taken. But such is not the case. To be thus controlled, as has often been held, would be for the courts in a blind effort to refrain from an interference with legislative authority by their failure to apply well regulated rules of construction to, in fact, abrogate their own power and usurp that of the Legislature, and cause the law to be held indirectly the contrary of that which the Legislature had in fact intended to enact. While it is for the Legislature to make the law, it is the duty of the courts to try out the right of intendment of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the Legislature to express its intent, and to follow which would pervert that intent."

Then the question under these very plain and rational rules of construction for our consideration is, does the Baskin-McGregor law, upon going into effect on the 12th day of July, 1907, immediately repeal all pre-existing liquor licenses in this State? To this question we say no. By an examination of the journals of the last Legislature we find that section 8 of the Baskin-McGregor law, as passed by the House, provided that upon taking effect of the act, all liquor dealers' licenses then in force in the State should be revoked, and that the pro rata amount due should be refunded by the State, and the pro rata amounts due by the counties and cities, if any, should also be refunded, but the Senate journal shows that this provision was stricken out, and the bill, as amended by the Senate, was subsequently concurred in and passed by the House. As stated above, we can examine the journals of the Legislature to find out this intent. Then it follows, as night follows day,

that where a clause expressly repealing the former law has been elim-
inated from a law before its final passage, the conclusion is irresistible
that the Legislature did not at least intend an immediate repeal of the
old law. This conclusion is fortified by reverting somewhat to the his-
tory of this State on the liquor question. No one seriously insists that
the Legislature should pass a prohibition law applying to the whole
State without first submitting to the people and having them adopt a
constitutional amendment authorizing said act. We are not here de-
ciding whether this would be necessary or not; many lawyers in Texas
have always maintained that it is; many equally learned maintained that
a constitutional amendment is not necessary to pass State prohibition,
but all agree that such a complete change in our policy of dealing with
the liquor traffic is of such importance that no legislator or any number
of legislators would have the temerity to attempt to pass State prohibi-
tion without first getting an expression of the majority of the people of
Texas on this subject. Then if they would not pass State prohibition
for two years without getting such expression, then the conclusion is
irresistible that they would not pass a temporary prohibition law in
Texas for twenty or thirty days. To say that the Baskin-McGregor law
immediately repeals all pre-existing laws is but another way of saying
that the Legislature intended to give to the people of Texas State pro-
hibition for twenty or thirty days, or to place no character of restraint
or license, pain or penalty upon the sale of whisky during said twenty or
thirty days, according to the construction that each individual lawyer
might give the condition thereby created. We are irresistibly driven
from this conclusion.

Then the next question arises, did the Legislature intend that the old
licenses should continue in force until their expiration, and that then
each one who desired to renew said license would then have to avail
himself of the conditions, pains and penalties and privileges of the
Baskin-McGregor law. To this question we say no. This conclusion is
arrived at after a. very careful scrutiny and investigation into the pro-
visions of the Baskin-McGregor law. It is provided by the terms
thereof that the license upon a retail dealer in whisky should be
$375 per year; for selling malt liquors $62.50 per year. This is a
marked increase in license over the old law; that is to say, the license
under the old law for a retail sale is $300; under the present law $375.
Then the Legislature provides bond in the sum of $5,000, which bond
may be forfeited for various things not made the basis for forfeiture
under the bond as provided for under the old law. Furthermore, a man
under the Baskin-McGregor law must get a permit from the comp-
troller, attach said permit to a petition to the county judge, wherein he
applies for a license to sell whisky, which application to the county
judge must be set down for a hearing, not less than ten nor more than
twenty days from the date of the filing thereof, and after the trial upon
the merits of the applicant, and his fitness for running a saloon, if a
judgment is awarded him, granting said permit, then the applicant for

the license must take a certified copy of said judgment to the county collector, and from him get a receipt for the money paid for the license, present this receipt to the county clerk, and then execute bond in the sum, as stated, of $5,000, conditioned that various and sundry things shall operate a forfeiture of said bond and license. This, as above suggested, would take from twenty to thirty days in practical operation to enable one to comply with the provisions of the Baskin-McGregor law after it went into effect. Then, as the State insists, if the Baskin-McGregor law repeals the old law, then on the 12th day of July we would have no law in Texas regulating the sale of whisky, and under the terms of the Baskin-McGregor law it would take from twenty to thirty days, as stated, to get a license. During all this time the State would lose the revenue incident to said conditions, and society would have no protection against the unlicensed and unbridled sale of whisky during said period. Surely the Legislature did not intend to bring about any such condition under the Baskin-McGregor law. Nor would the fact of the repeal of the license militate against this proposition. It is not necessary to cite authorities on the proposition that a saloon license is a bare permit from the Legislature to sell whisky which can be revoked at any time in the discretion of the Legislature, even without provision in the repealing statute authorizing a refund of the unearned license. While this would not be perhaps common equity and justice on the part of the Legislature, still the right to do so has never been seriously questioned in this State. It also follows with equal force that they did not intend to place one man in Texas under a $300 license with certain pains, penalties and conditions attaching to his bond for the sale of whisky, and another man in the same town forced to pay $375 for license with many conditions to his bond more onerous than those applying to the first man. If they intended this, then we would have a unique and unparalleled precedent in Texas of one liquor man prosecuted and his bond forfeited for a certain act, and yet the man selling whisky by his side in the next store could do, with absolute liberty and perfect license, the very thing and the very acts that had wrecked and ruined the man having the license under the Baskin-McGregor law.

The provision of the Baskin-McGregor law that make things penal and unlawful that were not penal and unlawful before, are too numerous to be collated in this opinion, but suffice it to say that it provides, among other things, that the dealers' license may be revoked by the county attorney filing a complaint and petition before the county judge as provided in section 18 of the act. Section 18 in substance says that after filing the petition the county judge shall give the party having the license, against whom the county attorney has filed a complaint, a five days' notice, and after hearing the evidence on said complaint, if it appears that he did sell whisky on Sunday, that his license can be and shall be thereby forfeited. This is a condition attaching to a man under the Baskin-McGregor bill that does not attach to a man under the license laws existing in Texas at the time of the adoption of the said Baskin-

McGregor law. Then we are forced, as stated above, to give validity and effect to the clear legislative intent, to some extent at variance with the words of the Baskin-McGregor law. What is that intent? It simply is this, the Legislature merely designed that those having license under the old law should have a reasonable time in which to comply with the provisions and conditions of the Baskin-McGregor law, during which time they would have a right to continue in the sale of whisky according to conditions of the old law, and would merely be awarded a reasonable time in which to comply with the new law.

The facts in this case show that relator was selling in defiance of the Baskin-McGregor law on the 12th day of September. This being true, he has clearly violated its provisions and is subject to its pains and penalties, since the only right he had by virtue of said law was to have continued his business until he could have complied in a reasonable time with the provisions and conditions of the Baskin-McGregor law. This he could have done readily within thirty days, if not sooner, from the 12th day of July, the time when the Baskin-McGregor law went into effect. But the facts before us show no effort to do this, but he relies upon the proposition that he had a right to continue selling whisky from May of this year until May of next year under his old license. Having failed to comply with the law, and having violated its plain letter and spirit, we hold that he should be prosecuted according to the terms of the complaint and information before us, and that he is guilty as evidenced by the agreed statement of facts filed herein of a violation of every salient feature of the complaint and information.

Accordingly, relator is remanded to the custody of the sheriff of Bexar County, and it is further ordered that he pay all costs accrued by virtue of the issuance of this writ of habeas corpus.

*Relator remanded to custody.*

Davidson, Presiding Judge, absent.

HENDERSON, JUDGE.—I agree to the conclusion, and will express my views.

HENDERSON, JUDGE.—While I concurred in the result reached by Judge Brooks in an opinion deciding this case, I do not concur in some of the propositions announced by him, and the matter is of such importance that I deem it proper to express my views on the questions presented.

In May, 1907, the applicant took out a license under the proper authorities in the city of San Antonio for the sale of spirituous, vinous and malt liquors by retail for one year, paying the taxes therefor. This license was taken out under the then existing laws on the subject. See Revised Civil Statute, arts. 5060a to 5060i inclusive, which was the act of 1893. See also arts. 3380 to 3383 inclusive. At the regular session of the Thirtieth Legislature an act was passed regulating the sale of intoxicating liquors by retail, which provided for an increased tax on the

sale of both spirituous and malt liquors, and other provisions covering the entire subject for the regulation of the sale of intoxicating liquors by retail. See Acts Thirtieth Legislature, p. 258.

Applicant did not take out a license, or pay the tax under the new act, or comply with any of the provisions thereof, but continued his occupation of a retail liquor dealer under the former act and on the 12th of September he was arrested for pursuing his occupation without a license under the new act and he sued out a writ of habeas corpus before this court. It may be stated that the Act of the Thirtieth Legislature of 1907 · was approved on the 18th of April, 1907, and went into effect ninety days after adjournment, which was on the 12th of July, 1907.

Applicant contends that he had a right to pursue his occupation under his license granted by virtue of the former law, because, as he maintains, the law of the Thirtieth Legislature did not repeal the former law and did not revoke his license. That his authority to pursue his occupation continued for one year; that is, until the — day of May, 1908, as he had paid the tax and procured a license for that time.

I understand the opinion by Judge Brooks to hold substantially that the law of the Thirtieth Legislature did repeal the former law on the subject and its effect was ultimately to revoke the license, but that applicant had a reasonable time after the 12th of July, 1907, to procure license under the new law; and that this reasonable time had expired on the 12th of September, 1907, and that appellant had made no effort to procure a new license; and that he was consequently amenable to the provisions of said last mentioned act.

It may be stated that applicant does not contend, but concedes the power of the Legislature to repeal the former law on the subject of the sale of intoxicating liquors by retail, either by expression or by implication. His contention, however, is that the Legislature did not do so, and he gathers this mainly from the fact, that the Legislature made no provision to reimburse those who had paid for license, their money for the unexpired term, and in this connection, he cites some other circumstances, and insists that the legislative intent was not to revoke the former license. In support of his contention he cites us to a number of authorities. With many of these I concur, to wit: The principle is well recognized that repeals by implication are not favored, and it is not necessary to cite authorities in support thereof. It is also understood that where there is a general revising act which expressly repeals all inconsistent acts and parts of acts, there is an implication that if there are parts of former acts not embraced in the new, and not inconsistent therewith, such portions are not repealed. We are also referred to Davis v. State, 2 Texas Crim. App., 431, and to State v. Drake, 86 Texas, 329; and Hirn v. State of Ohio, 1 Ohio St., 15; and Bush v. D. C., 1 Ct. App., D. C., 1.

The Davis case was a bawdy house case in which under an ordinance authorized by the charter of the City of Waco, license were granted to prostitutes. The appellant paid the license. The ordinance of the city

was repealed but the unexpired portion of the license tax was not reimbursed appellant. It was held in that case that before revocation, the balance of the tax should have been reimbursed. If the principle announced in that case would be applicable to a liquor dealer's case, that doctrine has long since been overruled so far as this State is concerned. In Drake's case I notice the court says there was no substantial difference between the law of 1887 and 1893, especially with reference to the provision regarding minors. The court say: The Act of 1893 was prospective in its operation, and there is nothing in it indicating intention to withdraw, absolutely or in terms, from persons who had license to sell liquors at the time it was enacted, the right to do so in accordance with the license already obtained, so long as it does, under its terms, remain in force. The right to do so under such legislation should not be questioned.

I fail to see how that decision has a bearing on the question here involved. The court held that the law was substantially re-enacted and a continuous law. The Ohio case, of course, can be differentiated from the case here. The repealing clause there was simply to the effect that all laws or parts of laws licensing the sale of spirituous liquors, which are inconsistent with the provisions of this act, shall be and the same are hereby repealed. The court further speaking says: The repealing clause effects nothing but the power to grant licenses in future after the law takes effect. It repealed the authority in the law of 1831 to grant any more licenses to retail spirituous liquors, but nothing further. There is no language employed expressive of any intention to revoke or annul the unexpired license previously granted under it. The license was a privilege and acquired right, which, during its term, was not dependent on the continuance of the law under which it had been granted. If a license had been granted and taken out under the Act of 1831, on one day, and the next day the entire law had been repealed, it could not be claimed that the license was revoked. The repeal of the law would simply take away the authority to grant future license. It is clear that the unexpired licenses were not expressly repealed or revoked by the Act of 1851. And it is but fair to presume that if the General Assembly had intended any such thing, such intention would have been expressed, and provision made for refunding the money obtained for the licenses revoked.

I would further observe if the Ohio case is authority there for the proposition that the repeal of a retail liquor license law, without reimbursing the unexpended money paid for the license, authorizes the licensee still to pursue the business under the old law, it is not the rule here, nor is it the rule under the weight of authority, especially the more recent authorities.

The District of Columbia case appears to be more in point than either of the others, but in that case the 17th section materially differentiates it from the one at bar. That section authorizes the holder of the license under the new law to deposit the fee for another year and continue the

business lawfully until such time as the board shall have passed upon the application and refused it.

Now, coming back to the proposition, does the law of the Thirtieth Legislature abrogate and repeal the former laws on the subject under which applicant had procured a license? That it did so, both by express provision and by strong and clear implication, it occurs to me, is obvious; and if the language used bears out this construction, then we are not called on to invoke rules of construction as to the intent of the Legislature. I concede, however, if the repeal was merely by expression, and the bill itself, judged from its provisions, did not repeal the former law, or if it was doubtful as to some of its provisions whether or not the two might stand harmoniously together, then we might invoke the rules to determine the meaning or intention of the Legislature, but not otherwise.

The main question here is, was the law of the Thirtieth Legislature so plain and unambiguous in its provisions, indicating a repeal of the former law on the same subject, as not to require the revocation of any rule, to determine the intention of the Legislature on the subject of repeal? If so, then under all the authorities, the act must be governed simply by the language used. The rule to test this question being as follows: If a statute is plain, certain and unambiguous, so that no doubt arises from its own terms as to its scope and meaning, a bare reading, suffices; then interpretation is needless. Sutherland Statutory Construction, section 234. And again we find this language in section 237: "If the words are free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation."

I quote from Mr. Endlich on Interpretation of Statutes, sections 4 to 8, as follows: "The legislature must be intended to mean what it has plainly expressed, and consequently there is no room for construction. It is, therefore, only in the construction of statutes whose terms give rise to some ambiguity, or whose grammatical construction is doubtful, that courts can exercise the power of controlling the language in order to give effect to what they suppose to have been the real intention of the law makers." And again we find: "Where, by the use of clear and unequivocal language, capable of only one meaning, anything is enacted by the legislature, it must be enforced, even though it is absurd or mischievous. If the words go beyond what was probably the intention, effect must nevertheless be given to them."

Again, in section 5 we find this expression: "The clear language of a statute can be neither restrained nor extended by any consideration of supposed wisdom or policy. So long as a legislative enactment violates no constitutional provision or principle, it must be deemed its own sufficient and conclusive evidence of the justice, propriety and policy of its passage." And in section 6 we read as follows: "It has been said that though vested rights are divested, those who have to interpret the law

must give effect to it. And they are bound to do this even when they suspect (on conjectural grounds only) that the language does not faithfully express what was the real intention of the legislature when it passed the act, or would have been its intention if the specific case had been proposed to it. Even when a court is convinced that the legislature really meant and intended something not expressed by the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." And in section 7, we read: "The moment we depart from the plain words of the statute according to their ordinary and grammatical meaning, in a hunt for some intention founded on the general policy of the law, we find ourselves involved in a 'sea of troubles.' Difficulties and contradictions meet us at every turn. Indeed, to depart from the meaning on account of such views, is, in truth, not to construe the act, but to alter it. But the business of the interpreter is not to improve the statute; it is to expound it. Whilst he is to seek for the intention of the legislature that intention is not to be ascertained at the expense of the clear meaning of the words. The question for him is not what the legislature meant, but what its language means." To the same effect see Black on Interpretation of Laws, section 35.

On the subject of Implied Repeals, Mr. Sutherland, section 138, uses this language: "An implied repeal results from some enactment the terms and necessary operation of which can not be harmonized with the terms and necessary effect of an earlier act. In such case the later law prevails as the last expression of the legislative will; therefore, the former law is constructively repealed, since it cannot be supposed that the law making power intends to enact or continue in force laws which are contradictions. The repugnancy being ascertained, the later act of provision in date or position has full force and displaces by repeal whatever in the precedent law is inconsistent with it." On the same subject see Endlich on Interpretation of Statutes, secs. 198 to 200; Norris v. Crocker, 13 How., 429; Dowdell v. State, 58 Ind., 333; Johns v. State, 78 Ind., 332; Mitchell v. Brown, 1 E. & E., 267.

In Stebbins v. State, 22 Texas Crim. App., 32, we find this rule laid down and authorities cited in support of it, to wit: "Where a new statute in itself comprehends the entire subject and creates a new, independent and entire system respecting the subject matter, it is universally held to repeal and supersede all previous systems and laws respecting the same subject matter." And see Dickinson v. State, 38 Texas Crim. Rep., 472; Harold v. State, 16 Texas Crim. App., 157. In Rowland v. State, 12 Texas Crim. App., 418, almost the exact question in this case came before this court. I quote from the latter case as follows: "The questions presented are: 1. Did appellants' license, obtained under the previous law, protect them from the operation of the new law, during the period of time covered by their license? In other words, having paid for and obtained a license to sell liquor for the period of twelve months, could the Legislature, by im-

posing an additional tax upon their occupation, destroy the vitality of their license? Could the Legislature revoke or repeal this license? 2. If it had such authority, did it in fact exercise it? While there exists some conflict of authorities upon the question as to the right or power of the Legislature, by a general law, to revoke a license to sell liquors for which a fee has been received by the State, we think the weight of authority is in support of such right or power." Citing a great number of authorities. Then the court proceeds as follows: "In the case before us, did the Legislature exercise this right of power, and revoke the license under which defendants were selling liquor? We think so. The act increasing the tax expressly repeals the law under which the license was issued, and while section 3 of this repealing act contains a saving clause in favor of a certain class of liquor dealers therein specified, this saving clause does not relate or apply to the liquor dealers having license to sell in quantities of one quart and not more than five gallons. We think, therefore, that the effect of the act of March 11, 1881, was to revoke the license of the defendants, and that such license was no longer a protection to them after that act took effect," and see Ex parte Lynn, 19 Texas Crim. App., 293.

And again we find in Smith v. State, 44 Texas, 444, the following: "An act providing for, or defining substantially, an offense made by a previous law, and providing a different punishment, will be held to repeal the former act, and not as cumulative." I refer to this case, because it will be seen by reference to the former law on the subject (see 411a Code Criminal Procedure, and section 4 of the Act of the Thirtieth Legislature) that an entirely different penalty is created from that formerly existing, for pursuing the occupation without a license.

Now, in view of these rules supported by the great current of authority, if not by all, and especially by our own reports, how does the matter stand with reference to a repeal by the Thirtieth Legislature of former acts on the subject of retailing spirituous liquors. In the first place, the last act contains a direct and express repeal in the following language, section 35: "All laws and parts of laws in conflict with this Act are hereby expressly repealed."

But, as we have heretofore stated, if there was something in the acts showing a want of intention to repeal all or some of the provisions of the former act, such act or such provisions, might stand, notwithstanding the express repeal contained in the act; but when we look to the act itself, how does the matter stand? We find that the two acts were passed,—one in 1893 and one in 1907,—for the purpose of controlling and regulating the retail traffic in intoxicating liquors. Both acts cover essentially the same ground. They levy a tax, the last one increasing the tax, both on spirituous and malt liquors. Both acts provide how licenses shall be procured,—the last act radically different from the former. Both acts provide for bonds and give the terms thereof. The last act in some material respects different from the former. Both acts provide how the business shall be conducted, regulating the method to be

pursued by the retailer, and the last containing provisions radically different and more restrictive than those contained in the former act, and the last act containing a penalty for pursuing the occupation without a license, essentially different from the former act. Indeed, in the language of the books the last act comprehends the entire subject and creates a new independent and entire system respecting the subject matter and under the authorities, it is universally held to repeal and supersede all previous systems and laws respecting the same subject matter. The language is clear, unambiguous and unequivocal, and leaves absolutely no room for interpretation as to what the Legislature may have meant, and to hold, that because the Legislature struck out a provision to reimburse the holders of unexpired liquor license, that this fact would render equivocal or ambiguous, a plain statute, it seems to me, would be a travesty. The Legislature had the power to eliminate said provision or to refuse to pass it, however equitable such a measure might have been. They could have passed a separate bill on the subject, or the matter could have been referred to some future Legislature. Had there been anything ambiguous in the law with reference to its repeal, it is possible that this matter might have been invoked as an aid in ascertaining the real intent of the Legislature with reference to the repeal. Nor does it occur to me that there is anything in the suggestion that the Legislature could not have intended to create prohibition in the State for as much as twenty days. If the Legislature had the power and did a thing, we cannot speculate as to what their intention was in order to defeat the operation of a law passed by them, or to postpone its effect. As far as I am advised, the Legislature is not restrained by any constitutional provision from regulating the liquor traffic in non-local option territory. They are not only authorized to suspend the retail of spirituous and malt liquors, but they can abrogate same. This would not effect the sale otherwise than at retail. To quote Judge Hurt on the subject, and it cannot be claimed that he was partial to State prohibition, but he was a great judge and loyal to his convictions: "The people of the State might desire the prohibition of saloons, and not absolute prohibition, but we are seriously told that they cannot have this—that they must take absolute prohibition in order to obtain the suppression of saloons, and this they must receive as doled out to them by the separate action of counties, precincts, cities, and towns. This is absurd. We will follow this subject but one step further. Local option prohibits absolutely in the county of its adoption. Say that this divests the Legislature of the power to prohibit absolutely all over the State (a proposition too preposterous for discussion), may not the Legislature still retain the power to prohibit saloons? Concede that the Legislature, by reason of the local option provision of the Constitution, cannot prohibit the sale of such liquors absolutely, may it not still retain the power to prohibit the saloons? Now, it is well settled by all the authorities that the Legislature—no constitutional provision forbidding—has the right to absolutely prohibit the saloon business—the retail of intoxicat-

ing liquors. If, therefore, the Legislature can prohibit this business absolutely, it follows inevitably that the Legislature can annex to the pursuit of such business just such conditions precedent as it may deem just, unless the citizen has granted to him affirmatively by the Constitution of the United States the right to sell such liquors by retail—to keep a saloon. If such right is given, the Legislature might regulate the business, but regulation could not extend to prohibition. No such right is conferred, and hence another position of counsel for appellant is unsound." See Bell v. State, 28 Texas Crim. App., 96.

This brings us to the last proposition in the case, when did the law, that is, the act known as the Baskin-McGregor bill go into effect. Evidently like all other laws passed by the Thirtieth Legislature, it went into effect ninety days after adjournment, which was on the 12th of July, 1907. And thereafter it became unlawful for any one to pursue the occupation of a retail liquor dealer under any former law, because that stood repealed, and no man could be mulcted in damages thereafter for a violation of the provisions of the bill, or could be prosecuted criminally under some provision of the criminal statute relating to his former license; but from the 12th of July onward was amenable only to the provisions of the new law. Of course, it would be as absurd to hold that the two laws regulating the retail liquor traffic, with diverse and antagonistic provisions, could operate together at the same time, as it would be that two bodies could occupy the same space at the same moment. The new law, as heretofore stated, repealed by expression and implication the former law and provided a penalty for those who should retail intoxicating liquor without license. It was competent for the Legislature to suspend for a day, or a week or a month, the procurement of license, and during that time, and while the machinery of the new law was getting in working order, the sale of intoxicating liquors was suspended, pending the procurement of the license. And unless it can be successfully maintained that the retail of spirituous liquors is an inalienable right and cannot be suspended, no man could complain at the delay, but was compelled to await the issuance of his license before he could embark in the business.

Entertaining these views, supported as they are by the authorities, I concur in the disposition of the case.