REVISED APRIL 21, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10121
_____

C & H NATIONWIDE, INC

                    Plaintiff - Appellant

v.

NORWEST BANK TEXAS NA, Garnishee; ET AL

                    Defendants

WESLEY KENNEMER; CURLEY JOE TRUCKING

                    Appellees

_____

No. 99-10381
_____

C & H NATIONWIDE INC

                    Plaintiff - Appellant

v.

NORWEST BANK TEXAS NA; ET AL

                    Defendants

WESLEY KENNEMER; CURLEY JOE TRUCKING, INC

                    Appellees

_____

_____

March 8, 2000

Before KING, Chief Judge, and DUHÉ and DeMOSS, Circuit Judges.

KING, Chief Judge:

Plaintiff-Appellant C & H Nationwide, Inc., appeals from the district court's judgment dismissing C & H's garnishment action against Appellees Wesley Kennemer and Curley Joe Trucking, Inc. (No. 99-10121), and the district court's subsequent award of attorney's fees to Appellees (No. 99-10381). We dismiss appeal 99-10121 as moot, reverse the district court's award of attorney's fees to Appellees, and deny all motions carried with the case.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant C & H Nationwide, Inc. ("C & H"), and Appellees Wesley Kennemer and Curley Joe Trucking, Inc. ("Appellees"), make another appearance before us, albeit with a much smaller entourage. In this latest battle in an ongoing feud, we are called upon, ultimately, to answer one simple question: Are Appellees entitled to $1,472.50 in attorney's fees? Unfortunately, answering that question requires that we navigate through a rather dense and often confusing history.

C & H used to operate a motor carrier business. As we understand the arrangement, C & H entered into contracts with

2

others, including Appellees (the "Owners-Operators"), to supply the trucks and drivers for the enterprise. Under these contracts, C & H forked over a portion of its take in exchange for the equipment and services. Unfortunately, C & H did not fare so well in the trucking business and consequently closed its doors in late 1988.

In 1989, we decided, in an unrelated case, that motor carriers who had billed at negotiated rates lower than tariff rates filed with the Interstate Commerce Commission could bill shippers for the difference. See Supreme Beef Processors v. Yaquinto, 864 F.2d 388 (5th Cir. 1989). C & H, like many others, had billed at negotiated rates and, after our decision in Supreme Beef, sent out undercharge claims. A group of Owners-Operators, including Appellees, decided that they had a right under the contracts they had entered into with C & H to a portion of the undercharge claims. It appears that C & H agreed, but the two sides could not agree on whether the Owners-Operators were entitled to a cut of the gross claims or the net collected revenues.

The disgruntled Owners-Operators filed suit in state court seeking damages for C & H's failure to pay the contracted amount of the claims and for its failure to give proper notice before terminating the contracts when it closed down in 1988. The Owners-Operators dismissed their suit, however, as part of settlement negotiations between the two sides. The negotiations

proved fruitless, and eventually C & H filed suit seeking a declaration of the parties' rights and obligations under the contracts. The Owners-Operators counterclaimed.

After a bench trial, the Owners-Operators were awarded damages, and C & H was awarded a total of $213,847.64 in costs and attorney's fees. See District Court Order entered Dec. 8, 1998, at 1. In a subsequent appeal, we reversed part of the district court's judgment. See C & H Nationwide, Inc. v. McDonald, No. 98-10564, at 4, 200 F.3d 815 (5th Cir. Nov. 2, 1999) (unpublished).

Prior to our decision in C & H v. McDonald, C & H sought to enforce its awards by garnishing accounts held by Appellees at Defendant Norwest Bank - Texas, N.A. ("Norwest"). At the time, Kennemer had over $4,000 on deposit in a checking account at Norwest, which amount Norwest sequestered in its garnished funds account. Appellees moved to dismiss the garnishment action, alleging that it was prohibited by section 31.008 of the Texas Finance Code.[1] The district court agreed and dismissed the

---

[1] Section 31.008, the statute in force at the time, provided:

(a) An attachment, injunction, execution, or writ of garnishment may not be issued against or served on a financial institution in this state to collect a money judgment or secure a prospective money judgment against the financial institution before the judgment is final and all appeals have been foreclosed by law.

(b) This section affects an attachment, injunction, execution, or writ of garnishment issued to or served on a

garnishment action without prejudice; Kennemer's funds were consequently released from Norwest's garnished funds account. C & H timely appealed the district court's judgment (No. 99-10121). The court allowed Appellees to apply for attorney's fees and recoverable costs. The court eventually awarded Appellees $1,472.50 in attorney's fees.[2] See Order entered Mar. 19, 1999, at 6. C & H timely appealed this order (No. 99-10381). After the district court awarded attorney's fees in this case, the state of Texas repealed section 31.008 and replaced it with Texas Finance Code section 59.007.[3]

---

financial institution for the purpose of collecting a money judgment or securing a prospective money judgment against a depositor of or deposit account in the financial institution.

TEX. FIN. CODE ANN. § 31.008 (West 1998) (repealed 1999).

[2] Appellees moved for an award of attorney's fees on the ground that such fees are recoverable in Texas as actual damages for wrongful garnishment. See Wesley Kennemer and Curly Joe Trucking, Inc.'s Motion to Award Attorney Fees, filed Dec. 17, 1998, at 1.

[3] Section 31.008 was repealed on May 31, 1999. See 1999 Tex. Sess. Law Serv., ch. 344, §§ 9.002(2), 9.004(a) (West). Section 59.007, which replaced section 31.008, see id. § 2.016, became effective on September 1, 1999. See id. § 9.004(b). Section 59.007 provides:

(a) An attachment, injunction, execution, or writ of garnishment may not be issued against or served on a financial institution that has its principal office or a branch in this state to collect a money judgment or secure a prospective money judgment against the financial institution before the judgment is final and all appeals have been foreclosed by law.

(b) An attachment, injunction, execution, or writ of

5

Appellees have moved this court for damages and costs for a frivolous appeal under Federal Rule of Appellate Procedure 38; C & H responded to each motion and moved the court to award it attorney's fees in the amount of $500 for effort expended in responding to Appellees' frivolous motions.  These motions have been carried with the cases.

## II.  STANDARD OF REVIEW

Resolution of this case turns on the district court's interpretation of section 31.008 of the Texas Finance Code.  This court reviews questions of law, such as the proper construction of a statute, de novo.  See Woodfield v. Bowman, 193 F.3d 354, 358 (5th Cir. 1999).

## III.  JURISDICTION

Ours is a court of limited jurisdiction.  Among the limitations is the requirement that there be a live case or controversy between the parties.  See Hope Medical Group for Women v. Edwards, 63 F.3d 418, 422 (5th Cir. 1995); Howard Gault

---

garnishment issued to or served on a financial institution
for the purpose of collecting a money judgment or securing a
prospective money judgment against a customer of the
financial institution is governed by Section 59.008 and not
this section.

TEX. FIN. CODE ANN. § 59.007 (West Supp. 1999).  Section 59.008
deals generally with notice requirements.  See id. § 59.008.

6

Co. v. Texas Rural Legal Aid, Inc., 848 F.2d 544, 557 (5th Cir. 1988). In their brief in No. 99-10121, Appellees asserted that they had filed a cash and supersedeas bond, thereby rendering any question regarding the garnishment action moot. C & H replied that no supersedeas bond had been filed. Concerned that factors other than the bond issue raised by the parties may have rendered one or both of these appeals moot, we sua sponte requested briefing on the subject and now determine our jurisdiction to entertain these appeals. See Webb v. B.C. Rogers Poultry, Inc., 174 F.3d 697, 699 (5th Cir. 1999).

The "case or controversy" requirement of Article III of the United States Constitution prohibits federal courts from considering questions "that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). Federal courts are not in the business of rendering advisory opinions. See, e.g., United States v. Texas Tech Univ., 171 F.3d 279, 286 (5th Cir. 1999). "The mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." Rocky v. King, 900 F.2d 864, 866 (5th Cir. 1990). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer v.

7

<u>Kemna</u>, 523 U.S. 1, 7 (1998) (quoting <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990)).

## A.  Appeal 99-10121

Appeal 99-10121 deals directly with the issue at the heart of this case, whether the district court correctly concluded that section 31.008(b) precludes C & H from garnishing Appellees' bank accounts.  As far as we can tell, there is no answer that we could give to this question that would affect the right of C & H to enforce its remaining judgment against Appellees.  The district court dismissed C & H's garnishment action without prejudice, leaving C & H free to reapply for a writ of garnishment under section 59.007 at any point since it became effective in September of last year.[4]  Moreover, the funds sequestered by Norwest have been released and are, we assume, long gone.  Any ruling we might hand down regarding those funds, and we are at a loss for what that ruling might be, would neither add to nor detract from C & H's judgment underlying the writ of garnishment.   When all the wrapping has been stripped away, we are being asked simply to decide what a repealed statute upon which no one, let alone the parties before us, may rely meant when it was in force.  Because a decision by this court regarding the construction of section 31.008 can have no effect on the

--------

[4] As we explain, <u>infra</u>, the provision at issue here, section 31.008(b), was not carried over into section 59.007.

8

rights of the litigants before us, appeal 99-10121 is most assuredly moot and must be dismissed.

## B. Appeal 99-10381

Appeal 99-10381 asks whether, under Texas law, Appellees are entitled to attorney's fees in this case as parties against whom a garnishment action was wrongfully initiated.[5] The garnishment action was only wrongful, in this case, if section 31.008 prohibited it. Addressing that question requires us to determine whether the district court correctly construed section 31.008, the very issue we decided was moot in appeal 99-10121. We have previously held however that we can reach a now-moot substantive issue when necessary to determine whether the district court correctly awarded attorney's fees under state law. See Wilfed Academy of Hair and Beauty Culture v. Southern Ass'n of Colleges and Sch., 957 F.2d 210, 213 (5th Cir. 1992). We are bound by the decision in Wilfred, see Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115, 1121 n.8 (5th Cir. 1992), and therefore proceed to construe section 31.008.

---

[5] C & H did not appeal the district court's implicit determination that under Texas law, attorney's fees are available as actual damages for the wrongful issuance of a writ of garnishment. Even though we question the correctness of that determination, see Beutel v. Paul, 741 S.W.2d 510, 514 (Tex. App. 1987, no writ) (stating that "attorney's fees are not recoverable as actual damages in a wrongful garnishment suit"), the issue is not before us.

## IV.  SECTION 31.008

At the time of the district court's ruling, section 31.008(a) provided, inter alia, that a "writ of garnishment may not be . . . served on a financial institution . . . to collect a money judgment . . . against the financial institution before . . . all appeals have been foreclosed by law."  TEX. FIN. CODE § 31.008(a) (repealed 1999).  Section 31.008(b) further provided that "[t]his section affects a[] . . . writ of garnishment . . .served on a financial institution for the purpose of collecting a money judgment . . . against a depositor of . . . the financial institution."  Id. § 31.008(b) (repealed 1999) (emphasis added).  The dispute here centers on whether section 31.008(b) precluded C & H from serving a writ of garnishment on Norwest to collect its judgment against Appellees.

C & H argues that former section 31.008(b) is ambiguous on its face because it is not clear from the statute what "affects" means.  Moreover, it asserts that the language of section 31.008(b) was the product of a drafting error.  C & H insists that the legislative history of section 31.008 supports this assertion and that section 59.007 was enacted, in large part, to correct the drafting error.  Appellees, on the other hand, cite United Servs. Auto. Ass'n v. Perry for the proposition that a statute can only be considered ambiguous if it "is susceptible of more than one accepted meaning."  102 F.3d 144, 146 (5th Cir.

10

1996).  They argue that former section 31.008 is not ambiguous because it only lends itself to one meaning.  "[T]he one and only meaning is clear: C & H cannot garnish Kennemer's bank account until all appeals are final.  What other 'affect' [sic] could subsection (b) reasonably have?"  Appellees' Brief (No. 99-10381) at 8.  According to Appellees, we are bound by the literal language of section 31.008.

Appellees' reliance on United Services is problematic in two regards.  First, Appellees misconstrue the language of United Services.  In that case, we stated, "A statute is ambiguous if it is susceptible of more than one accepted meaning."  102 F.3d at 146.  We never stated that the mentioned condition was the exclusive indication of ambiguity, as Appellees contend.  Second, we were there construing a federal statute under the Chevron doctrine.  See id. at 145.  We do not necessarily construe a state statute under the same framework we use to construe a federal statute.  When considering a state statute, we are "bound to answer the question the way the state's highest court would resolve the issue." Occidental Chem. Corp. v. Elliott Turbomachinery Co., 84 F.3d 172, 175 (5th Cir. 1996).  Therefore, the statutory construction techniques employed in United Services are inapposite here.

Appellees' further citation to Ex parte Vaccarezza, 105 S.W. 1119, 1123-24 (Tex. Crim. App. 1907), for the same proposition likewise misconstrues the discussion in that case.  While the

11

proposition for which it is cited is contained in the opinion,

Appellees fail to acknowledge that it is merely the quotation of

a treatise in a concurring opinion.  The majority opinion in that

case states the rule as follows:

> The intention of the Legislature is the aim of statutory construction, and where, though not expressed, it is clearly manifested by implication from the language used, we cannot say that it should not have effect. That which is not expressed in words may be plainly imported by implication. And, again, Chief Justice Moore, in the case of Russell v. Farquhar, 55 Tex. 359, lays down the rule for the construction of statutes very clearly, as follows: "If courts were in all cases to be controlled in their construction of statutes by the mere literal meaning of the words in which they are couched, it might well be admitted that appellants' objection to the evidence was well taken; but such is not the case. To be thus controlled, as has often been held, would be for the courts in a blind effort to refrain from an interference with legislative authority by their failure to apply well-regulated rules of construction, to, in fact, abrogate their own power and usurp that of the Legislature, and cause the law to be held indirectly the contrary of that which the Legislature had, in fact, intended to enact. While it is for the Legislature to make the law, it is the duty of the courts to try out the right of intendment of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent; for it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the Legislature to express its intent, and to follow which would pervert that intent."

Id. at 1120 (quoting Russell v. Farquhar, 55 Tex. 355, 359

(1881)).

The Texas Code Construction Act[6] supports the holding in Ex

parte Vaccarezza.  It provides that:

---

[6] The Code Construction Act applies to section 31.008.  See TEX. FIN. CODE ANN. § 1.002 (West 1998).

> In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:
>> (1) object sought to be attained;
>> (2) circumstances under which the statute was enacted;
>> (3) legislative history;
>> (4) common law or former statutory provisions, including laws on the same or similar subjects;
>> (5) consequences of a particular construction;
>> (6) administrative construction of the statute; and
>> (7) title (caption), preamble, and emergency provision.

TEX. GOV. CODE § 311.023. The Texas Supreme Court has recently commented on the Texas Code Construction Act:

> Under the Code Construction Act, . . . courts may consider prior law, the circumstances under which the law was enacted, and legislative history among other matters to aid them in construing a code provision "whether or not the statute is considered ambiguous on its face." But prior law and legislative history cannot be used to alter or disregard the express terms of a . . . provision when its meaning is clear from the code when considered in its entirety, <u>unless there is an error such as a typographical one</u>.

Fleming Foods v. Rylander, 6 S.W.3d 278, 283-84 (Tex. 1999) (internal citations omitted and emphasis added).

Even if former section 31.008 were clear on its face, C & H's allegation that section 31.008(b) is the product of a drafting error allows us to look past the literal language of the provision. When viewed in context of the entire statute, however, we conclude that the meaning of former section 31.008(b) is not clear. Just exactly how a limitation on the ability to serve a writ of garnishment on a bank to collect a judgment against that bank (section 31.008(a)) "affects" garnishments served to collect a judgment against a depositor of the bank is ambiguous. If the legislature had intended to prohibit

13

garnishments against depositors until all appeals had been exhausted, it could have clearly provided that a writ of garnishment "may not be . . . served . . . before . . . all appeals have been foreclosed," as it did in section 31.008(a).

Legislative history indicates that the provision, as enacted, was the product of a drafting error. Section 31.008 was enacted in 1997 as part of the original adoption of the Texas Finance Code. See 1997 Tex. Sess. Law Serv. ch. 1008, § 1 (West). It derived from Texas Civil Statutes article 342-609, and the Texas legislature did not intend to significantly alter the substantive content of the provision along the way.[7] Article

_____

[7] Section 31.008 was simply a recodification of section 8.002 of the Texas Banking Act of 1995 without substantive change. See 1995 Tex. Sess. Law Serv. ch. 914, § 1 (West) (adopting section 8.002, which was codified at TEX. REV. CIV. STAT. ANN. art. 342-8.002 (West repealed 1997)); 1997 Tex. Sess. Law Serv. ch. 1008, § 6(a) (West) (repealing section 8.002); id. § 1 (stating that the purpose of the Finance Code adopted by chapter 1008 of the 1997 Session Law was, in part, to revise "the state's general and permanent statute law without substantive change") (codified at TEX. FIN. CODE ANN. § 1.001 (West 1998)). Indeed, section 31.008(b) read exactly as section 8.002(b) had. Section 8.002, in turn, was based on Texas Revised Civil Statute article 342-609 and was intended to clarify, but not significantly alter, that provision. See Tex. Banking Act of 1995, Tex. Dept. of Banking Leg. Proposal at 26 (1995) ("Section 8.002 is based on current Article 342-609 without significant change but including clarifications. Generally, a bank is not required to post security for a judgment to prevent execution while the judgment is being appealed. National banks have a similar provision in 12 U.S.C. § 91."); Tex. H. Fin. Insts. Comm. Rep. (Substituted) C.S.H.B. 1543, at 13 (1995) ("Section 8.002 is based on current Article 342-609 without significant change but including clarifications.").

14

342-609 was originally enacted in 1989.[8]  See 1989 Tex. Sess. Law Serv. ch. 1196, § 7 (West).  The text of article 342-609 gives no indication that it was intended to prevent a writ of garnishment against a depositor of a bank from being served on the bank, and the House Committee Report for H.B. 871, the original Bill containing the provision, explained that the purpose of the provision was to "exempt[] financial institutions from the requirement of posting appeal bonds."  Tex. H. Fin. Insts. Comm. Rep., Bill Analysis for H.B. 871, at 1 (1989).  The reason for this exemption is clear from the report.  Under prior law, "[t]he requirement . . . that a bank file a supersedeas bond when appealing lender liability lawsuits contribute[d] to . . . banks quickly being rendered insolvent by single court decisions."  Id. The provision was intended to protect banks, not their depositors.

_____

    [8] Article 342-609 provided, in pertinent part:

ATTACHMENT, INJUNCTION, OR EXECUTION
Sec. 1    An attachment, injunction, or execution may not be
          enforced against a financial institution unless
          there is a final judgment in the proceeding in
          which the attachment, injunction, or execution is
          issued.
Sec. 2    For the purposes if this article, a judgment is
          final if all appeals have been exhausted or
          foreclosed by law.

1989 Tex. Sess. Law Serv. ch. 1196, § 6 (West).  Article 342-609 had a minor amendment in 1993.  See 1993 Tex. Sess. Law Serv. ch. 1050, § 8 (West).  That amendment is not material to our discussion.

A review of section 59.007, the successor to section 31.008, supports the conclusion that the provision was not intended to have an impact on garnishments against bank customers. Section 59.007(b) deleted the "affects" language at issue here and provides instead that writs of garnishment against depositors are controlled by another section of the Finance Code that deals mainly with notice requirements.

Finally, interpreting former section 31.008(b) as Appellees suggest we do would lead to the result that no writs of garnishment could be served on financial institutions to collect money judgments against anyone until all available appeals had been exhausted. This construction is a drastic departure from existing law and settled expectations. It could, potentially, force a judgment creditor to wait years before being able to collect a judgment rendered in his favor without the protection of a supersedeas bond. In the face of an ambiguous statutory provision, we are loathe to impute such an intent to the Texas legislature without clearer indication in the legislative history that such was their true objective.

After reviewing the legislative history, prior and subsequent provisions governing the same transactions, the object sought to be attained in passing the original provision, and the consequences of construing the provision as Appellees suggest, we easily conclude that legislative intent was to protect financial institutions from default by prohibiting, prior to the exhaustion

16

of available appeals, a writ of garnishment from being served on a financial institution to secure a money judgment against the institution itself, while at the same time leaving judgment creditors free to secure a money judgment against depositors of the financial institution through a writ of garnishment. Section 31.008 should not have been construed to preclude the writ of garnishment served on Norwest in this case.

Based on this construction, the district court's construction of the statute was in error, C & H's garnishment action was not wrongful, and the order awarding attorney's fees to Appellees must be reversed.

## V. FRIVOLOUS APPEALS AND MOTIONS

Federal Rule of Appellate Procedure 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Appellees argue that C & H's case is frivolous, entitling Appellees to damages and costs under Rule 38. In its responses to Appellees' motions, C & H argues that the motions are themselves frivolous, entitling it to attorney's fees of $500.

As to Appellees' motions, "[a]n appeal is frivolous if it relies on legal points that are not arguable on their merits."

17

<u>Walker v. City of Bogalusa</u>, 168 F.3d 237, 241 (5th Cir. 1999) (internal quotation marks omitted).  C & H's legal points form the basis of our opinion and are not frivolous under this standard.  Appellees are not entitled to damages and costs under Rule 38.  As to C & H's cross-motions, it does not point to a provision entitling it to attorney's fees for a frivolous motion. If it intended to rely on Rule 38 as well, its reliance was misplaced.  "[B]y its very language, the rule applies only to <u>appellees</u> and only to frivolous <u>appeals</u>."  <u>Id.</u>  C & H is not entitled to attorney's fees.

## VI.   CONCLUSION

For the foregoing reasons, we DISMISS No. 99-10121 as moot, REVERSE the district court's award of attorney's fees to Appellees in No. 99-10381, and DENY all motions carried with the case.  In No. 99-10121, each party shall bear its own costs; in No. 99-10381, Appellees shall bear the costs.

18